W. A. MORGAN & BROTHERS ET AL. V. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS ET AL.

Decided April 27, 1908.

**1.—Fires—Contract of Indemnity—Construction.**

M. sued a railroad company for the value of cotton burned through the negligence of the railroad company while upon the platform of an adjacent compress company; the compress plant was partly upon land leased by it from the railroad company; the contract of lease contained the following provision: "Said second party (the compress company) hereby covenants to assume all the risks of loss or damage to any building, improvements or property of any kind that may be on or near said premises, that may be occasioned by fire communicated in any manner from the right of way, locomotives or other machinery, or in any manner whatever, by the party of the first part (the railroad company) while this lease is in force, and hereby releases and discharges the party of the first part from any claim, demand or action on account of any such loss or damage." Held, the indemnity or release applied solely to property of the compress company, and not to property of third parties.

**2.—Same—Contract—Authorship—Strict Construction.**

A contract of indemnity should be strictly construed against the party who framed and wrote the same, and with the wording of which the other party had nothing to do.

**3.—Corporation—Contract of Indemnity—Ultra Vires.**

A corporation chartered for the purposes of erecting and maintaining a compress and of compressing cotton therein; of storing and handling cotton, and of doing a general cotton storage business, and of generally doing and performing such acts necessary to properly manage and conduct the business of compressing cotton, and for this purpose to purchase, own or lease sufficient real estate for such business, and to erect thereon its compresses, and such sheds, houses, platforms and machinery as were necessary to properly conduct and maintain the business for which the corporation was organized, would have no authority to enter into a contract of indemnity with its lessor against loss or damage to the property of third persons situated on the leased premises.

**4.—Principal and Agent—Shipper and Compress—Notice.**

A cotton compress company, in receiving a shipper's cotton from a railroad company for compression, would be the agent of the shipper so far as the bailment was concerned, and actual knowledge on the part of the compress company of the terms of a contract of indemnity between it and a railroad company would be imputed to the shipper; but such would not be the case where the notice to the compress company was not actual, but only implied or constructive.

**5.—Contributory Negligence—Proximate Cause.**

In order to prevent a recovery for loss or injury, contributory negligence must have proximately contributed to the injury. Charge considered, and held defective but harmless.

**6.—Railroads—Fires—Fuel—Coal or Oil—Negligence.**

In a suit for the value of cotton burned by sparks from a locomotive, the plaintiff having alleged that the defendant used coal instead of oil for fuel in its locomotive, and that the same was negligence, an issue of fact was thus presented for determination by the jury, and the exclusion of evidence to support the allegation was error.

**7.—Contributory Negligence—Discovered Peril—Actual Knowledge.**

Even though an injured party has, by his own negligence, contributed to his injury, he may still recover if the peril of injury is actually discovered by the wrongdoer in time to avoid the injury by the use of the means or instrumentalities at hand and no effort is made to avert the injury. The question of care or diligence in discovering the peril does not enter into the case. Rule applied to the burning of cotton upon the platform of a compress.

**8.—Fires From Locomotives—Prima Facie Case.**

Proof that fire is communicated to adjacent property by sparks from a railroad locomotive makes a *prima facie* case of negligence against the railroad company, and entitles the owner to recover in the absence of evidence of proper care on the part of the company to prevent the escape of the sparks from the engine.

**9.—Negligence—Custom—Irrelevant Testimony.**

The habitual practice of any number of persons for any length of time cannot make a negligent act an act of due care and diligence. Hence, in a suit against a compress company for the value of cotton burned while in its custody by sparks from a nearby railroad, testimony that defendant's plant was located with reference to the railroad tracks in the same manner as such plants are usually located was irrelevant, and properly excluded.

**10.—Fires From Locomotives—Evidence of Other Fires—Rule.**

When the particular locomotive which caused a fire cannot be identified, evidence that sparks and burning coals were frequently dropped, or fire set out by engines passing upon the same road, on other occasions, at about the time of the fire in question, is admissible to show habitual negligence, and to make it probable that the fire in question was caused in the same way. But when the particular engine which caused the fire is known the inquiry must be confined to the construction and condition of said engine.

**11.—Same—Construction of Locomotive—Expert Testimony.**

Upon the issue of proper care in the selection and use of spark arresters for a locomotive, the testimony of a witness who had been a locomotive engineer for more than forty years, and worked on seven different roads, was competent as to the efficiency of the arrester used by the defendant, although he had never seen or used the kind used by the defendant. The testimony, however, of a witness who obtained his information from railroad publications as to the kind of spark arresters in general use by first-class roads would be incompetent.

Appeal from the District Court of Fayette County. Tried below before Hon. L. W. Moore.

*Brown & Lane, James H. Robertson* and *Alexander & Thompson,* for appellants.—Plaintiffs can not lawfully be compelled, over objection, to submit to new parties being brought in by defendants on pleadings raising issues not involved in plaintiffs' suit against defendant. Skipwith v. Hurt, 94 Texas, 322; Frey v. Ft. Worth & R. G. Ry. Co., 86 Texas, 466; Oak Cliff College v. Armstrong, 50 S. W. Rep., 610; Texas Midland v. Miers, 37 S. W., Rep., 640; Missouri, K. & T. v. Keahey, 83 S. W. Rep., 1102; Coutlett v. United States Mortg. Co.,

60 S. W. Rep., 820; Rev. Stats., art. 754; Stewart v. Gordon, 65 Texas, 347.

Where the language of the contract is wholly prepared by one party to the contract and its terms are to any extent ambiguous, such ambiguity should be resolved against the party who framed the language. Brown v. Palatine, 89 Texas, 590; Bills v. Hibernia, 87 Texas, 551.

Where a contract is susceptible of two constructions, one of which will make it legal and the other illegal, that one should be adopted which will give it effect. 9 Cyc., page 586, also page 590; Faulk v. Dashiell, 62 Texas, 646; Ragsdale v. Robinson, 48 Texas, 398.

It would not be lawful for a corporation organized under the laws of Texas to do a compress business to go into the business of indemnifying or insuring against loss of property of third parties. Such undertaking would be ultra vires. Rev. Stats., article 642, sec. 28; Western Md. Ry. Co. v. Blue Ridge Hotel Company, 2 L. R. A. (N. S.), 887; Central Transportation Co. v. Pullman, 139 U. S., 24; Thomas v. Western Jersey R. R. Co., 101 U. S., 71.

When the officers of the compress company and the individuals who compose said officers had no recollection or knowledge of any indemnity term of the contract with the railway company, when the plaintiffs had no knowledge of the existence of such contract and such indemnity term, and when plaintiffs also did not know of the provision of the cotton receipt making the same at owner's risk and exempting the compress company from liability, no privity existed between the plaintiffs and the railway company which could in any event have the cotton receipt inure to the benefit of said railway company or relieve it from liability for its negligence in destroying plaintiffs' cotton. McAdams v. Missouri, K. & T. Ry. Co., 19 Texas Civ. App., 82; Missouri, K. & T. v. Keahey, 83 S. W. Rep., 1102; Texas & P. v. Watson, 190 U. S., 287, at 293; King v. Southern Pac., 109 Cal., 96; 29 L. R. A. 755.

Where a contract is ambiguous, the construction given to it by the parties themselves in acting under it is entitled to great weight. San Antonio St. Ry. v. Adams, 87 Texas, 131; Galveston, H. & S. A. Ry. v. Johnson, 74 Texas, 261; Tobler v. Willis, 59 Texas, 82; Gulf, C. & S. F. Ry. v. Schawe, 22 Texas Civ. App., 599.

The taking of a receipt by the railway company to inure to its own benefit, if it should negligently destroy plaintiffs' cotton without advising plaintiffs that said receipt was intended to release the railway company, was a fraud on plaintiffs, both as to the railway company and as to the compress company, and no person is permitted to take advantage of his own fraud or wrong. Borden v. Houston, 2 Texas, 606; Boyd v. Jacobs, 7 Texas Civ. App., 134; Armstrong v. O'Brien, 83 Texas, 648; Com'l. Bank v. Jones, 18 Texas, 825.

No agent can, when acting in the business of his principal, contract with third parties for his own benefit and against the interest of his principal. Tinsley v. Peniman, 12 Texas Civ. App., 597; Peoples' Bldg. Assn. v. Dailey, 17 Texas Civ. App., 42; Scripture v. Scottish American Mortgage Co., 20 Texas Civ. App., 158; Armstrong v. O'Brien, 83 Texas, 635.

The contract between the compress company and the railroad com-

pany of 1898 was intended only as a release and discharge of the railroad company from liability to the compress company for the destruction of its property, and was not intended to affect the rights of third parties. San Antonio & A. P. Ry. Co. v. Adams, 6 Texas Civ. App., 102.

Where the peril of loss to plaintiff was known to defendant, or could have been known to defendant by the exercise of reasonable care on its part, and after such knowledge or chance to know, defendant through negligence injures plaintiff, defendant will be liable notwithstanding plaintiff may have been guilty of contributory negligence. Edwards v. Campbell, 12 Texas Civ. App., 236; Texas & P. v. Breadow, 90 Texas, 31; Texas & P. v. Staggs, 90 Texas, 461; Missouri Pacific v. Platzer, 73 Texas, 123; Galveston, H. & S. A. Ry. v. Ryon, 70 Texas, 58; Hays v. Gainesville St. Ry. Co., 70 Texas, 607; International & G. N. Ry. v. Smith, 62 Texas, 255; International & G. N. Ry. Co. v. Cocke, 64 Texas, 158; St. Louis S. W. Ry. v. Jacobson, 28 Texas Civ. App., 150; Law v. Missouri, K. & T. Ry. Co., 67 S. W. Rep., 1025; Texas & Pac. Ry. v. Lively, 14 Texas Civ. App., 554.

Where the owner of cotton stores it with the compress company, over which he has no control and in which he has no interest, for the purpose of storing, compressing and shipment, such compress company is as to such owner an independent contractor and not the agent of the owner, and the owner is not responsible for any negligence of the compress company causing or contributing to the injury of the property. Cunningham v. International & G. N. R. R., 51 Texas, 511; Burton v. Galveston, H. & S. A. Ry., 61 Texas, 535; Missouri, K. & T. Ry. v. French, 36 S. W. Rep., 488; 16 Am. and Eng. Ency., pp. 187 and 192.

Negligence creating liability can arise whenever a want of ordinary care causes a loss, irrespective of whether the want of ordinary care is in the matter of having defective appliances, in the operation of trains and rolling stock, or inefficient employes, or whether it arose from the want of exercise of care in the selection of a fuel, and it is error to exclude testimony tending to show that the use of a given fuel was negligence when such issue is raised by the pleadings. Missouri Pac. Ry. Co. v. Lehmberg, 75 Texas, 65.

What the great majority of people do in regard to a given matter can not be negligence, and evidence is proper to show what the custom and habit of the public was in regard to a particular matter, that therefrom the jury may determine, in connection with the other testimony, whether a given act was negligence. Bennett v. Missouri, K. & T. Ry. Co., 32 S. W. Rep., 834; Missouri Pac. v. Lehmberg, 75 Texas, 65; Texas & P. v. Robertson, 82 Texas, 663.

Where the issue is raised of the negligent destruction by fire of property through sparks from an engine, testimony of other fires set out by engines of the same railway company is admissible. Texas & P. Ry. Co. v. Watson, 190 U. S., 287.

*Andrews, Ball & Streetman,* for appellee La Grange & Lockhart Compress Company.—If the lease made and entered into September 15, 1898, by and between the Missouri, Kansas & Texas Railway Company of Texas and the La Grange & Lockhart Compress Company can properly be construed, as contended by defendant Railway Com-

pany and ruled by the trial court, as undertaking to indemnify and hold harmless the railway company against loss and damage occurring from fire caused by the defendant railway company or its servants, not only as to the property of the compress company, but the property of all other persons on the leased premises, in such event the lease contract as to such undertaking was ultra vires and void as being without the charter powers of the compress company. Rev. Stats., art. 642, sec. 28; Northside Ry. Co. v. Worthington, 88 Texas, 562; Sabine Tram Co. v. Bancroft & Sons, 16 Texas Civ. App., 171.

The lease declared upon by the defendant, the Missouri, Kansas & Texas Railway Company of Texas, was framed by said defendant, and will, therefore, be strictly construed against it when relied upon as a contract to indemnify it against loss or damage to the property of third persons, and it not appearing from the contract itself, so construed, that such indemnity or guaranty was intended, the verdict of the jury and the judgment thereon should be in all things affirmed as to this appellee. Goddard v. East Texas Fire Ins. Co., 67 Texas, 71; Bills v. Hibernia Ins. Co., 87 Texas, 551; Brown v. Palatine, 89 Texas, 590.

*Coke, Miller & Coke, A. H. McKnight, Lane, Jackson, Kelley & Wolters, John T. Duncan* and *Charles A. Warnken,* for appellee M. K. & T. Ry. Co. of Texas.—The court did not err in charging the jury that the contract of lease between the railway company and the compress company requires the compress company to assume all risks by fire, by sparks from engines, or other machinery of the defendant railway company, and does bind said compress company to indemnify said railway company for any loss of any property upon said platform.

The court did not err in that portion of its general charge to the effect that the receipt given by the compress company to plaintiffs is a contract of receiving said cotton at the risk of the owner, and as such discharges the compress company from all liability for the destruction of said cotton by fire or otherwise, when said charge is read in connection with the other portions of the charge. Skipwith v. Hurt, 94 Texas, 332; Gulf, etc., Ry. Co. v. Browne, 27 Texas Civ. App., 437; Smoot v. Richards, 8 Texas Civ. App., 146; Cobb v. Barber, 92 Texas, 311; City of San Antonio v. Talerico, 98 Texas, 151; Boyer & Lucas v. St. Louis, S. F. & T. Ry. Co., 72 S. W. Rep., 1039; Missouri, K. & T. Ry. Co. v. Keahey, 83 S. W. Rep., 1102; Martin v. Texas & P. Ry. Co., 87 Texas, 117; Philadelphia Underwriters v. Fort Worth & Denver City Ry. Co., 31 Texas Civ. App., 104; Love v. Keowne, 58 Texas, 200; Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 461; Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 175 U. S., 91; 44 Law. Ed., 84; Northern Pac. Ry. Co. v. McClure, 81 N. W. Rep., 52; 47 L. R. A., 149; Griswold v. Illinois Cent. Ry. Co., 57 N. W. Rep., 843; 24 L. R. A., 647; Stephens v. Southern Pacific Co., 41 Pac. Rep., 783; 29 L. R. A., 751; 50 Am. St. Rep., 17; McAdams v. Missouri, K. & T. Ry. Co., 19 Texas Civ. App., 82; American Central Ins. Co. v. Chicago & A. Ry. Co., 74 Mo. App., 89; Smith v. Crosby, 47 Texas, 129; Watrous v. McKie, 54 Texas, 71; Smith

v. Brown, 66 Texas, 545; Tittle v. Vanleer, 89 Texas, 192; Baltimore & O. S. W. Ry. Co. v. Voigt, 176 U. S., Law Ed., 499.

The undisputed testimony in this case was to the effect that the plaintiffs, Morgan & Brothers, were guilty of contributory negligence, such as contributed directly to the burning of said cotton; and the jury in this case could, upon that issue alone, have rendered no verdict for plaintiffs herein. Martin v. Texas & Pac. Ry. Co., 87 Texas, 117; Texas & Pac. Ry. Co. v. Levine, 87 Texas, 437.

Railroad companies have the legal right to operate steam engines over their roads, and, in order to generate steam, to use a fuel in general use by railroads; and are not required to use fuel oil as a fuel. International & G. N. Ry. Co. v. Timmerman, 61 Texas, 663; Gulf, etc., Railway Co. v. Benson, 69 Texas, 409; Galveston, etc., Ry. Co. v. Horne, 69 Texas, 648; Campbell v. Goodwin, 87 Texas, 276.

A railroad company may, by contract, secure immunity from liability caused by the negligence of its servants in operating locomotives whereby fire is set to property upon the right of way leased to persons for occupancy and the conduct of private business thereon; and lessee, a compress company, has the right, by contract, to secure immunity from liability to third persons who place cotton upon such leased premises by loss or damage thereto from fire. Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 461; Hartford Fire Ins. Co. v. Chicago, etc., Ry. Co., 175 U. S., 91; 44 Law Ed., 84; Northern Pac. Ry. Co. v. McClure (North Dak.), 81 N. W. Rep., 52; 47 L. R. A., 149; Griswold v. Illinois Cent. Ry. Co., 57 N. W. Rep., 843; 24 L. R. A., 647; Stephens v. Southern Pacific Co., 41 Pac. Rep., 783; 29 L. R. A., 751; 50 Am. St. Rep., 17; McAdams v. Missouri, K. & T. Ry. Co., 19 Texas Civ. App., 82; American Ins. Co. v. Chicago & A. Ry. Co., 74 Mo. App., 89; Woolrich & Sons v. Fort Worth & R. G. Ry. Co., 86 S. W. Rep., 942; Woodward v. Ft. Worth & R. G. Ry. Co., 35 Texas Civ App., 14; Baltimore & O. S. W. Ry. Co. v. Voigt, 176 U. S., 499; Louisville, N. A. & C. Ry. Co. v. Keefer, 44 N. E. Rep., 797; Pittsburg, Cincinnati, Chicago & St Louis Ry. Co. v. Mahoney, Administrator, 40 L. R. A., 101; 46 N. E. Rep., 917.

As to imputed knowledge: Martin v. Texas & P. Ry. Co., 87 Texas, 117; Bennett v. Missouri, etc., Ry. Co., 11 Texas Civ. App., 423; Paris, etc., Ry. v. Nesbit, 11 Texas Civ. App., 608; Duggins v. Watson, 15 Ark., 122; Simpson v. Hand, 6 Wharton, 321; Broadwell v. Swigert, 7 B. Mon., 39; Toledo & W. Ry. Co. v. Goddard, 25 Ind., 197; Puterbaugh v. Reasor, 9 Ohio State, 487.

As to exemptions: Authorities cited under previous counter-proposition. Also: McCoy v. Southern Pacific Ry. Co., 26 Pac. Rep., 1110; Cincinnati, Hamilton & Dayton Ry. Co. v. Waterson & Kirk, 4 Ohio St. Rep., 425; Chamberlain v. Peterson, 31 C. C. A., 157; Brewer v. Ry. Co., 11 L. R. A., 483.

In view of the relation of the compress company to the cotton and to the plaintiffs, the negligence of the compress company is to be imputed to the plaintiffs. Martin v. Texas & P. Ry. Co., 87 Texas, 117, and authorities therein cited; Bennett v. Missouri, etc., Ry. Co., 11 Texas Civ. App., 423; Paris, etc., Ry. Co. v. Nesbitt, 11 Texas Civ. App., 608; Texas & P. Ry. Co. v. Tankersley, 63 Texas, 61.

Where the owner of cotton stores it with a compress company for the purpose of storing, compressing or shipment, such compress company is the agent of the owner, and any negligence of the compress company causing or contributing to the injury of the property will be imputed to the owner. Bennett v. Missouri, K. & T. Ry. Co., 11 Texas Civ. App., 423; Martin v. Texas & P. Ry. Co., 87 Texas, 117; Ry. Co. v. Tankersley, 63 Texas, 61.

Testimony of other fires set out by sparks emanating from engines of the same railway at other places and other times is not admissible. San Antonio & A. P. Ry. Co. v. Home Ins. Co. of New York, 70 S. W. Rep., 999; Galveston, H. & S. A. Ry. Co. v. Chittim, 31 Texas Civ. App., 40.

McMEANS, ASSOCIATE JUSTICE.—This suit, as tried on an amended petition filed May 16, 1906, was a suit by W. A. Morgan & Brothers and the Austin Fire Insurance Company and the Hartford Fire Insurance Company and the Insurance Company of North America to recover of the Missouri, Kansas & Texas Railway Company of Texas, the sum of $34,000 as damage by fire to 598 bales of cotton, occurring at La Grange, Texas, on the 27th day of February, 1906, through the negligence of the Missouri, Kansas & Texas Railway Company of Texas. The Railway Company vouched in the La Grange & Lockhart Compress Company and John Schumacher and C. Von Rosenberg, asking judgment over against them in the event the Railway Company was cast, and against them if the Compress Company was not bound by the contract they made for it. Defendant Railway Company dismissed as to Schumacher and Von Rosenberg. Trial was had before a jury, which, under the charge of the court, returned a verdict for the defendants, upon which judgment was entered. Motion for new trial having been overruled, this appeal is prosecuted.

The negligence alleged was, in part, that the Railway Company failed to have proper engines and appliances to prevent the escape of sparks and the setting out of fires; it neglected to use proper care to keep the engines and appliances in good repair, and neglected and failed to properly handle and operate its engines and cars and trains to prevent the escape of sparks and the setting out of fires; that it neglected to exercise ordinary care in the use of proper fuel to prevent the escape of sparks, and neglected exercising care to provide proper employes to handle its engines and cars and trains. That its engines, trains and cars were very recklessly, carelessly and unskillfully handled and managed in such a way as to cause or permit sparks to escape and set out fires. That said defendant did negligently and carelessly permit fire and sparks to escape from the engine onto the cotton, and permit and cause the cotton to be burned thereby; and did run its trains in and through the town of La Grange and over and along and across the streets thereof at a rate or speed of 25 miles an hour in violation of an ordinance forbidding the running at a speed exceeding six miles an hour, and did thereby cause the fire which injured, damaged and destroyed the cotton; that defendant was negligent in using coal as fuel instead of fuel oil, which would have prevented any escape of sparks and the fire,

The Railway Company in its answer denied any negligence on its part causing the fire, alleged that plaintiffs were guilty of contributory negligence causing or contributing to their own loss; that the Railway Company had a contract at the time of the alleged loss with the Compress Company under and by the terms of which the Compress Company undertook to hold the Railway Company harmless from any losses by fire caused by the Railway Company to the property of the Compress Company, or situated on its platforms, including the property of the plaintiffs; that the Compress Company when it received the cotton of the plaintiff made a contract with the plaintiff by the terms of which it was stipulated that the cotton should be held at owner's risk, and that the Compress Company should not be responsible for loss or damage by fire or water, in consequence whereof plaintiffs should not recover, or in any event, if plaintiffs should recover, that the Compress Company be made a party, and if judgment was rendered in favor of the plaintiffs, that the Railway Company have judgment over against the Compress Company.

The Compress Company denies that it, by its contract with the Railway Company, undertook to hold the Railway Company harmless as to loss and damage to property of third parties; says that the contract was only intended to apply to property owned by the Compress Company, and was not intended to apply to the property of the plaintiffs; that this meaning had been acted upon by the parties in their dealings with each other in regard to the contract; that the contract was framed and the language selected and adopted by the Railway Company in which the Compress Company had no part; that its charter only authorized it to do a compress business; that it was not authorized to do any indemnity or insurance business, and that any construction of the contract undertaking to make it hold the Railway Company harmless would be *ultra vires.* Said defendant further pleaded that when it received the cotton destroyed from the Missouri, Kansas & Texas Railway Company of Texas, it issued to the Railway Company a receipt which specified that the cotton was held at owner's risk, and that the Compress Company should not be liable for loss or damage by fire to the same.

Plaintiffs by supplemental pleadings by exception questioned the right of the Railway Company to vouch in the Compress Company, and excepted to the sufficiency of the contract set up, and the receipt set up as constituting a defense to plaintiffs' cause of action. They averred in reply that plaintiffs never at any time prior to the filing of the suit knew of the existence or contents of the contract between the Railway Company and the Compress Company, and did not know of the terms of the receipts issued by the Compress Company set up as defense; that the taking of the receipt by the Railway Company and the issuing of the receipt to the Railway Company by the Compress Company were fraudulent as to plaintiffs and without force; that plaintiffs were not parties to the contract between the Railway Company and the Compress Company; that the contract was, as to the Compress Company, *ultra vires* and void; that the Railway Company in hauling plaintiffs' cotton and delivering it to the Compress Company had no power or authority to take any receipts discharging any claims for

loss or damage in favor of the plaintiffs which might arise, and further, that the Compress Company, as a public warehouseman, was forbidden to limit its liability; that the contract between the Compress Company and the Railway Company and the receipts pretended to be taken by the Railway Company from the Compress Company for the cotton, were contrary to public policy, were a fraud on the rights of the plaintiffs, and were not binding on the parties from whom knowledge of the existence of these various contracts was withheld and concealed; that neither the receipts nor contract were made or authorized by Morgan & Brothers; that in so far as the leaving of the cotton uncompressed on platforms constituted contributory negligence, such negligence was that of the Railway Company, in as much as its bills of lading provided, "this Railway Company reserves to itself the privilege of compressing all cotton signed for under this bill of lading;" that the contract between the Compress Company and the Railway Company was beyond the power of the Compress Company to lawfully make; that even though plaintiffs should be held guilty of contributory negligence, nevertheless defendant Railway Company discovered the peril of plaintiffs' property and knew of the plaintiffs' absence and ignorance of such peril, and disregarded the safety of plaintiffs' property, but negligently, with this knowledge, failed to exercise reasonable care after the discovery of the peril in which plaintiffs' property was, to prevent its destruction by fire which caused the injury and damage to plaintiffs.

The La Grange Compress Company was organized and chartered in 1893 for the purpose of compressing cotton for the public for hire. Its plant was constructed on ground owned by it, with the exception of a portion, which was covered by its platform, which was owned by the Railway Company, the use of which was secured by a written lease from the Railway Company for five years, by the terms of which lease the Compress Company agreed to keep its building and contents fully insured for the benefit of the Railway Company against any damage or loss by fire communicated in any manner from the locomotive engines or other machinery of the Railway Company, and that said Railway Company should not be liable for any loss or damage to said building and contents by fire communicated from its engines or machinery or otherwise. At the expiration of five years, on September 15, 1898, the Compress Company and the Railway Company made another contract of lease which reads as follows:

"This lease made and entered into this, the fifteenth day of September, 1898, by and between the Missouri, Kansas & Texas Railway Company of Texas, party of the first part, and the La Grange Compress Company of La Grange, Texas, party of the second part, witnesseth:

"That the party of the first part, for the consideration hereinafter mentioned, does hereby lease, rent and let unto the said party of the second part, the following described real estate, being a portion of the right of way station grounds situated at the city of La Grange, county of Fayette and State of Texas, and specifically described as follows, to wit:

"Beginning at a point on the north line of Colorado Street 159

feet easterly from S. W. corner of alley in block No. 32; thence easterly along the north line of Colorado St. 296.5; thence northwesterly along platform of compress and parallel to and 6 feet from center line of said track 333 feet; thence southerly 146.2 feet to place of beginning.

"It being further understood that this lease is to be continued in force from year to year for the yearly consideration of Five Dollars, and at the expiration of one year, a revaluation will be made (the location and more accurate description whereof are shown by the plat thereof attached to the copy of the lease retained by the party of the first part) for the term of one year commencing the fifteenth day of September, 1898, and subject to renewal and continuation as hereinafter stated, and for the yearly rental of Five ($5.00) Dollars to be paid by second party in advance.

"No part of said building to be less than six feet from the center of nearest track.

"Said party of the first part covenants and agrees that during the continuance of this lease the enjoyment of the possession of said premises by the said party of the second part shall be free from interference by the said party of the first part, except such as may be necessary in the operation and maintenance of the Missouri, Kansas & Texas Railway Company of Texas, and said Railway Company shall have the right, at the expiration of the notice herein provided for, to at once enter and occupy said premises, or so much thereof as may be deemed necessary, and it is further understood and agreed by and between the parties hereto that this lease shall be deemed, by consent of parties, renewed and continued in force from year to year, unless one of the parties hereto shall immediately preceding the end of any year, give to the other, thirty days' notice in writing, of its or their intention to terminate the lease, and upon such notice being so given by either party, the lease shall terminate at the close of such year, at which time said first party shall be entitled to take full and exclusive possession of the premises hereby let. This provision, however, is not intended to impair or interfere with the reserved right of the Railroad Company to terminate this lease at any time, whenever in its judgment the possession of the grounds or any portion thereof hereby let, is necessary in the operation of its railway upon giving the notice herein provided.

"Said party of the second part covenants and agrees that they will occupy said premises and all buildings and improvements thereon only for the proper and legitimate use of cotton compress and to use and occupy same, and every part thereof, in such manner as not to commit or allow any nuisance, annoyance, inconvenience or interference to or with the operation or maintenance of said railway at any time or to any extent whatever; and that in consideration of the making of this lease to the party of the second part, and of the advantages secured to the second party by reason of obtaining the same, said second party hereby covenants and agrees to assume all the risks of loss or damage to any building, improvements or property of any kind that may be on or near said premises, that may be occasioned by fire communicated in any manner from the right of way, locomotives or other

machinery, or in any manner whatever by the party of the first part while this lease is in force, and hereby releases and discharges the party of the first part from any claim, demand or action on account of any such loss or damage.

"And said party of the second part covenants and agrees not to sublet said premises or any part thereof, except with written consent of the party of the first part, and said party of the first part may terminate this lease, and move all buildings and improvements and other property from said premises, provided the second party fails to do so after thirty days' notice that the grounds or the portion thereof named are required by the Railway Company in the operation of its railroad.

"And it is further stipulated that in the event of the termination of the aforesaid lease, for any reason, as hereinbefore provided, if the said lessee or the owner of any buildings on said ground, shall fail to remove any buildings or other property from said leased premises within ten days after the expiration of the said thirty days' notice, then the said lessor may remove said buildings and other property from the said premises, at the cost and expense of the lessee or owner of said property; and the said lessee or owner of said property hereby authorizes and empowers the said lessor so to do and agrees to pay the costs of said removal, and consents that it may stand as a charge against it, and a lien against the property so removed; and that the lessor may sell the same in order to reimburse itself for the cost and expense of removing said property from the said leased premises.

"And said second party covenants and agrees upon the expiration of any term hereunder, or at any time during any term hereunder upon notice as aforesaid and the tender by the party of the first part of the prorata portion of the rent for the unexpired part of the year, for which rent may have been paid, to peaceably and quietly surrender possession of said premises to the party of the first part or its assigns.

"In witness whereof, the parties hereunto have executed this lease in triplicate (any one of which may be used as the original) the day and year first above written, the party of the first part causing the same to be signed and sealed in its behalf by its General Superintendent."

This contract was in force on the 26th day of February, 1906, when the building of the Compress Company and some 2400 bales of cotton on its platform, including 598 bales belonging to W. A. Morgan & Brothers, the oil shed, cotton seed warehouse, and Alamo lumber shed and lumber therein, near the compress plant, were destroyed by fire.

Appellants, Morgan & Brothers, were engaged in business at Plum, a station on the appellee Railway Company's road a short distance from La Grange, from which point they, at various times, shipped the cotton in question over appellee's railway to the Compress Company for storage and compressment. The Railway Company in making delivery to the Compress Company took receipts for the cotton delivered, such receipts being substantially in the following words: "Re-

ceived from the M. K. & T. Ry. Co. of Texas, for account of W. A. Morgan & Bros., at owner's risk. This receipt must be properly endorsed and returned on delivery of this cotton and is not transferable without notice to this Company. Not responsible for loss or damage by fire or water."

After the execution of the contract between the Railway Company and Compress Company, which has been set out, the Compress Company amended its charter by changing its name to "La Grange & Lockhart Compress Company" and providing for the doing of a compressing business at Lockhart as well as La Grange, and thus under its new name succeeded to all the rights and contracts of La Grange Compress Company.

The evidence is undisputed that Morgan & Brothers had neither actual or constructive knowledge of the terms of the contract between the Railway Company and the Compress Company and no actual knowledge of the character of receipts taken for their cotton by the Railway Company from the Compress Company.

The appellee Railway Company's contention was that inasmuch as the Compress Company had, by contract, agreed to indemnify it against all loss or damage by fire set out by its engines or machinery, and inasmuch as the Compress Company stood in its shoes and between it and all liability, such as charged by appellants, and inasmuch as the Compress Company was primarily liable to appellants for damages or loss from fire, the release of the Compress Company by appellants was a release and discharge of the Railway Company from liability. The case was tried in part on this theory, the only exception added by the court's charge being that Morgan & Brothers in order to be bound must have had actual knowledge of the lease contract or actual knowledge of such facts and circumstances as would put an ordinarily reasonable person upon inquiry which would have led to a knowledge of the lease contract and contents thereof. The court in construing the contract charged the jury as follows:

"You are charged that said contract of lease between the Railway Company and the Compress Company does require the Compress Company to assume all risks by fire, by sparks from the engines and other machinery of the defendant Railway Company, and does bind said Compress Company to indemnify said Railway Company for any loss of any property upon said platform."

Appellants by many assignments of error, presented in various ways, attack this construction of the contract by the court, contending that at most the contract only applied to the property of the Compress Company and was not intended to indemnify the Railway Company against destruction of property situated on the platform which belonged to others. The appellee Compress Company also attacks this construction basing its contention on the same ground, and both further urge that in the event the construction they contend for is not correct, the contract was void for the reason that the Compress Company was chartered for the purpose of doing a general compressing business, and that if said lease contract constituted an assumption of risk or created any contract of guaranty or agreement for indemnity as pleaded by the Railway Company it was wholly without the pur-

pose of the Compress Company's articles of incorporation and the purposes of its organization, and was beyond its charter powers or privileges, in contravention of law, *ultra vires* and void. The court further charged the jury that if Morgan & Brothers had actual knowledge of said contract lease, or if they had actual knowledge of such facts and circumstances as would put a person of ordinary prudence upon inquiry which would have led to a knowledge of said lease and the contents thereof, then that they could not recover and to find a verdict for the Railway Company.

Morgan & Brothers requested the court to charge the jury as follows: "The contract executed and in evidence between the defendant Railway Company and the Compress Company can not be considered or held in this case to prevent the plaintiffs from recovering herein against the defendant Railway Company for damages on account of the burning of the plaintiffs' cotton in the event the jury believe from the evidence that the defendant Railway Company negligently caused the burning of the cotton of plaintiffs under such conditions as entitled plaintiffs to recovery." This charge was refused, and its refusal assigned as error.

It was shown by the evidence that the lease contract of 1898 was framed by the Railway Company, and in the wording of which the Compress Company had nothing to do; therefore it should be strictly construed against the Railway Company when it is relied upon by that company as a contract of indemnity against loss or damage to property other than that of the Compress Company. Bills v. Hibernia Ins. Co., 87 Texas, 551; Goddard v. East Texas Fire Ins. Co., 67 Texas, 71; Brown v. Palatine Ins. Co., 89 Texas, 590. And when so construed, if it appears that such indemnity was not so intended and contracted, the charge of the court complained of must be held to be error.

If the lease contract declared upon by the Railway Company is to be considered in the light of a contract of insurance or indemnity against loss by fire, it will, of course, be subjected to the well settled rule of construction that it must be strictly construed against the Railway Company, its author and framer. If this rule of construction was to be varied in the instant case, it would only be to more rigidly scrutinize the lease contract declared upon, for that it differs from the ordinary contract of insurance or indemnity against loss in that this lease contract is attempting to be construed by its makers to protect the Railway Company against fire from any cause, including its own negligence, not only as to the property of the Compress Company, but the property of all persons upon or near its premises. It would appear to be unreasonable to assume that the parties intended at the time of its making that it should be effective for any such purpose, and it occurs to us that no such construction could be tolerated unless the very language of the lease contract itself places such construction beyond peradventure.

The Railway Company, as the maker of the contract, had it within its power to use language which would have removed the question from the domain of controversy. Did it do so? Let us see.

"Said second party hereby covenants to assume all the risks of

loss or damage to any building, improvements or property of any kind that may be on or near said premises, that may be occasioned by fire communicated in any manner from the right of way, locomotives or other machinery, or in any manner whatever, by the party of the first part, while this lease is in force, and hereby releases and discharges the party of the first part from any claim, demand or action on account of any such loss or damage."

This clause from the lease contract, upon which the Railway Company alone relies, does not in itself, by any fair analysis, justify the construction sought to be given it by the Railway Company, even were the ordinary rule of strict construction against its framer, the Railway Company, pretermitted.

What is the undertaking of the Compress Company? Viewed in the most favorable light to the Railway Company, (1st) it assumes all the risks of loss or damage to any building, improvements or property on or near the leased premises, by fire communicated in any manner; and (2d) releases and discharges the Railway Company from any claim, demand, or action on account of any such loss or damage.

As to the first, somewhat of a novel term is used, one certainly not usually imported into contracts of insurance or indemnity. The phrase "assumes all the risks" is one which in its common acceptance applies to an employe entering the service of the master, who assumes all the risks incident to his employment, and by which the servant waives his right to recover for injuries received by him in such service. But we think that no reasonable construction could be given this clause that could possibly make it more onerous upon the Compress Company than that it assumed only risks of loss or damage to its own buildings and property.

To hold otherwise would be as unreasonable as it would be to hold that the servant, who, by his employment, enters into an implied contract with the master to assume all the risks incident to his employment, thereby assumes, not only the risk of loss or damage to himself incident to his employment, but damage occasioned to the property of third persons in the same accident; as, for instance, the derailment of a known-to-be-defective engine, which he was operating upon a known-to-be-defective track, whereby a person was killed or other property destroyed.

If there was a reasonable doubt left as to such construction of that portion of the sentence which refers to the risks assumed, it would be removed by the conclusion of the sentence which is set out *supra*, as the second obligation, and which follows the paragraph relating to assumed risks with only a comma intervening, to wit: "And hereby releases and discharges the party of the first part from any claim, demand or action on account of any such loss or damage." The words "release and discharge" have a well-defined meaning and settled interpretation. In ordinary parlance these words are certainly never used in relation to insurance, guaranty or indemnity. To release or discharge one from any claim, demand or action is universally understood to apply to a claim, demand or action owned or

controlled by the party agreeing and undertaking to release and discharge another from such claim, demand or action.

It would be, to say the least, unusual, if not unprecedented, to apply such terms to the claims, demands or right of action of third parties, as, for instance, the plaintiffs in this case, in whose behalf the Compress Company had no power, right or authority to make or execute such release or discharge, and which, if executed, would be futile and inoperative.

While other argument would appear superfluous, to remove any lingering doubt as to the foregoing being the only tenable construction of the clause relied upon by the Railway Company, let us examine some of the succeeding clauses of this lease contract.

We have seen that the covenant and agreement upon the part of the Compress Company was to "assume all the risks of loss or damage to any building, improvements or property of any kind, that may be on or near said premises." That, at best, this relates only to the buildings, improvements or property of the Compress Company is shown conclusively, we think, by the following clauses:

"And said party of the first part . may terminate this lease and move all buildings, improvements and other property from said premises, provided the second party fails to do so, after thirty days' notice." . . . "If the said lessee or the owner of any buildings on said ground shall fail to remove any buildings or other property from said leased premises, then the said lessor may remove said buildings and other property from the said premises, at the cost and expense of the lessee and owner of said property, and the said lessee or owner of said property authorizes and empowers the said lessor so to do, and agrees to pay the costs of said removal, and consents that it may stand as a charge against it and a lien against the property so removed, and that the lessor may sell the same, in order to reimburse itself for the cost and expense of removing said property from the said leased premises."

It will be noted that the same descriptive words are used, namely, "building, improvements or property," in the assumption of risks, that are afterwards used in the obligations to remove same from the premises upon due notice; in the authority given the lessor to remove same after failure to comply with such notice; in the clause authorizing the lessor to tax the cost of removal against the property; in the clause giving a lien against the property removed, and, lastly, authority to the lessor to sell the same to reimburse itself for the cost and expense of its removal from the premises.

Can it be contended that parties capable of contracting intended that a lessee should give a lessor, not only authority to remove property of third persons from the leased premises, but that they should mutually contract that the lessor so removing such property should have a lien upon it for the cost of its removal? That authority was or could be given by the lessee to the lessor to sell property not belonging to either?

When we consider, therefore, that the only property for which the Compress Company, at best, assumed the risk of loss or damage by fire was such as was denominated in the lease contract "building,

improvements or property of any kind on or near said premises," and that the only property for the destruction of which the Railway Company was released and discharged from damages was said buildings, improvements or property, and that the same descriptive terms were used when the removal thereof was contemplated, when the costs therefor were to be taxed, when the lien thereon for such costs was to be fixed, and when the sale thereof in satisfaction of the lien and costs was to be had, it follows that reference only was had to the buildings, improvements and property of the Compress Company.

But should we be mistaken in our construction of the contract, we are still of opinion that the contract was *ultra vires* and · void in so far as it was an attempt on the part of the Compress Company to indemnify the Railway Company against loss or damage to the property of third persons situated on or near the leased premises.

The purposes for which the compress corporation was formed, as set out in its charter, was to erect and maintain a compress and to compress cotton therein; to store and handle cotton and to do a general cotton storage business, and to genreally do and perform such acts necessary to properly manage and conduct the business of compressing cotton, and for this purpose, to purchase, own or lease sufficient real estate for such business and to erect thereon its compresses and such sheds, houses, platforms and machinery as necessary to properly conduct and maintain the business for which the corporation was organized.

While the Compress Company may have been authorized under its charter to assume the risks of loss to its own property, in consideration of the benefits to it by being permitted to locate on the right of way of defendant Railway Company, and to release and discharge the defendant Railway Company from loss by fire, which it might suffer as the result of such location, and the courts might treat such assumption of risk and release from liability as being properly within the enumerated powers conferred upon it by its charter, an entirely different proposition is presented by the Railway Company's contention that the lease contract embraces not only such loss, but the Compress Company by reason of the lease contract, insured and agreed to indemnify said Railway Company against loss suffered by third parties through fault of the Railway Company. Such contention, if true, and if the lease contract be susceptible of such interpretation, would unquestionably be without the charter powers of the Compress Company herein above set out. Such an undertaking of insurance or guaranty upon its part would be wholly without the purview of, or in any way incident or appertaining to its business of compressing and storing cotton. For instance, as the result of the very fire which destroyed plaintiffs' cotton, property belonging to third parties was destroyed largely exceeding in value the entire capital stock of the Compress Company. If the term "property situated on or near the leased premises" was meant to include the property of others as well as the property of the Compress Company, then the alleged guaranty extended, not only as to the large amount of cotton stored at the compress and upon its platforms, but to all other property destroyed

by fire, not belonging to the Compress Company, such as the Alamo Lumber Company's building and lumber.

All of the Compress Company's property and buildings were not situated upon the railway's right of way, and the term "property on or near said premises" was doubtless used so as to exempt the Railway Company from liability by reason of fire as to the property of the Compress Company adjacent to the right of way, and likely to be involved in the same fire.

This construction is a reasonable one, and would make the lease contract as to the clause in controversy a legal undertaking, whereas the construction given it by the Railway Company makes it an *ultra vires,* and therefore illegal, contract. If the contract be susceptible of both constructions, the courts will give it the former, in accord with the universal rule of construction that requires in such cases indulgence of the presumption that the parties making a contract intended to do a legal rather than an illegal act. Northside Ry. Co. v. Worthington, 88 Texas, 562; Sabine Tram Co. v. Bancroft, 16 Texas Civ. App., 171; South Texas Nat. Bank v. La Grange Oil Co., 40 S. W. Rep., 328; Central Transportation Co. v. Pullman Car Co., 139 U. S., 38; Western Md. Ry. Co. v. Blue Ridge Hotel Co., 62 Atl. Rep., 351; Revised Statutes, art. 642, sec. 28.

But even if the lease contract was properly construed by the court, and even if the contract as so construed was not upon the part of the Compress Company *ultra vires,* we are still of the opinion that the judgment against Morgan & Brothers should not be permitted to stand for the reason that the evidence indisputably shows that they were not parties or privies to the contract, and there was no evidence to show that they had actual knowledge of its existence or actual knowledge of such facts and circumstances as would put an ordinarily reasonable person upon inquiry which would have led him to a knowledge of the lease and of its terms. The contract of 1898 was delivered under the following circumstances. The agent for the Railway Company approached John Schumacher, the president of the Compress Company, and presented the contract which had been prepared and signed by the Railway Company in duplicate, with the simple statement: "Here is a renewal of your contract." Schumacher, as such president, then signed for his company, but never read the contract and knew nothing of its terms until after the fire. He had no actual knowledge of the provision relied upon by the Railway Company as indemnifying it against loss by fire until after Morgan & Brothers' cotton was destroyed, nor did the Compress Company have any knowledge thereof at the time it received or while it held the cotton, further than such as was implied by the signing of the contract by its president and the retention by him of a copy. Neither of the Morgans nor their agent had actual knowledge of the existence of the lease, nor were they in possession of any facts sufficient to put an ordinarily reasonable person upon inquiry which would have led to a knowledge of the lease and of its terms. It is true the Compress Company, in receiving appellants' cotton was their agent as far as the bailment was concerned, and actual knowledge by it of the terms of the contract would, it seems, be imputed to appellants,

(Martin v. Texas & P. Ry. Co., 87 Texas, 117), but we do not think it can be held that such implied or constructive notice to the Compress Company would be such notice to appellants as would be binding upon them. This was the view evidently taken by the trial court as shown by the charge wherein the jury was instructed to find for the Railway Company in the event appellants had actual knowledge of the contract, or actual knowledge of such facts as would put an ordinarily reasonable man upon inquiry; and the correctness of this charge is in no wise questioned by the Railway Company.

This disposes favorably to the contention of appellants of their assignments of error based upon the refusal of the court to sustain its special exceptions to the answer of the Railway Company making the Compress Company a party defendant, as well as all assignments based upon the charge of the court, and special charges given at the request of the Railway Company, and the denial of those requested by appellants, construing the contract; and renders unnecesary a consideration of all assignments relating to the receipts issued by the Compress Company for the cotton delivered to it by Morgan & Brothers.

By their thirteenth assignment of error appellants complain of the following portion of the court's charge: "If the jury find that the plaintiffs, W. A. Morgan & Bros., or their agent, failed to use such care as an ordinarily careful and prudent person would have used under the same or similar circumstances for the protection of their cotton, in placing or permitting the same to be placed and to remain upon the platform of the Compress Company, as they did, under all the circumstances and conditions surrounding the same, and that because of such failure, if any, they were guilty of negligence which contributed to the burning of said cotton, then the jury will find for the defendant, notwithstanding they may believe that the defendant was also guilty of negligence which contributed to the burning of said cotton." The ground of complaint being the omission to charge that contributory negligence to preclude a recovery must have directly and proximately contributed to the loss. This asserts the correct rule, but we do not think the jury could have understood from the charge as given that plaintiffs would be denied a recovery unless their negligence proximately contributed to the loss. If appellants desired fuller instructions upon the point they should have made written request therefor.

Error is predicated upon the omission of the court to submit the issue of the negligence of the Railway Company in using coal instead of fuel oil as fuel, and in refusing to give appellants' special charge No. 7, submitting that issue. The assignments raising the points are overruled because there was no testimony raising the issue. However, appellants offered testimony tending to prove that fuel oil as a fuel for generating steam in its locomotives is as good as coal; that it is in use in a great many, if not by most, of the railway systems in Texas, and has been for several years past, and that by its use the amount of sparks escaping would be largely diminished if not entirely prevented. This testimony upon objection was excluded, and

this action of the court is made the basis of appellants' twenty-ninth assignment of error.

If the danger of setting out fires by the use of coal as fuel was so much greater than when fuel oil was used that a person of ordinary prudence, situated and circumstanced as the Railway Company was, would have used the oil instead of coal, then it would be negligence not to use the oil. Whether such danger was greater when coal was used was a question of fact to be proved as any other fact in the case, and plaintiffs having properly pleaded the negligence of the Railway Company in this regard was entitled to introduce evidence in support of the issue and to have the issue appropriately submitted for the determination of the jury. Missouri Pac. Ry. Co. v. Lehmberg, 75 Texas, 65.

Error is predicated upon the refusal of the court to give in charge to the jury appellants' special charge No. 8, which is as follows: "You are charged, if you find and believe from the evidence that the cotton situated on the platform of the La Grange and Lockhart Compress Company, and among them the cotton of plaintiff, W. A. Morgan & Bros., were in a position of peril from sparks likely to escape the engines of the defendant Railway Company, on the 27th day of February, 1906, at the time when the agents and servants of defendant Railway Company were operating its engine over and across the tracks of said Railway Company on the north and northwest side of said compress platform; and that said agents and employes of the defendant Railway Company discovered and knew of the peril, if any existed, from loss by fire from sparks set out by defendant's engine, or could have known of the peril from such loss, if any such peril existed, by the exercise of ordinary care on their part; and you further find and believe from the evidence that by the exercise of ordinary care upon the part of the agents and servants of defendant Railway Company in the operation of said engine they could have prevented the injury and damage to and destruction of said cottons on said platform, and among them the cotton of said W. A. Morgan & Bros.; and you further find and believe from the evidence that the agents and employes of defendant Railway Company failed to exercise the care that an ordinarily careful and prudent person would have exercised, after discovering said peril, if any, if they did discover it, or after they could have discovered it by the exercise of ordinary care on their part, and as a consequence thereof said cottons of W. A. Morgan & Bros., were damaged and destroyed, then you will find a verdict in favor of the plaintiffs for the injury and damage to said cottons of W. A. Morgan & Bros. caused by said fire, even though you should find and believe from the evidence that plaintiffs, W. A. Morgan & Bros., were guilty of contributory negligence in having said cottons on said platforms at the time and in the manner and condition and under the circumstances under which said cottons were there at the time of their injury and destruction."

The charge in the form submitted was incorrect and should not have been given. The vice in it consists in the proposition that not only if the Railway Company's servants and agents operating its engine at the time the fire was set out actually discovered the peril in which

appellants' cotton was, but if they could have known of such peril by the exercise of ordinary care on their part, and that if they failed to exercise the care that a person of ordinary prudence would have exercised after they could have discovered, by the exercise of ordinary care, the peril, and that in consequence thereof the loss ensued, to find for plaintiffs even though they should find that plaintiffs were guilty of contributory negligence in having said cotton on the platform at the time and under the circumstances it was there when destroyed. We do not understand this to be the law. The general rule is that where an injury results from the contributory negligence of the injured party no recovery can be had however negligent the other party may have been in bringing it about. To this general rule there is the exception that even though the injured party has by his negligence contributed to his own injury or loss he may still recover if the peril of injury or loss is actually discovered by the wrongdoer in time, by the use of the means or instrumentalities at hand, to avoid the injury or loss. To apply this rule to the present case we assume for the purpose of illustration that appellants' cotton would not have been destroyed but for the negligence of themselves and their agent, the Compress Company, in placing and permitting it to remain in a place where it was likely to be ignited and burned by sparks emanating from passing engines of the Railway Company, and that such negligence precluded a recovery however negligent the Railway Company may have been in not equipping its locomotive with proper spark arresters, and however negligent its servants may have been in operating its locomotive at the time the fire was set out. But if the engineer knew of the situation of said cotton and the peril to which it was exposed by the manner in which the engine was being operated, and if it was practicable for him to do the work in which he was engaged in some other manner, by which the damage by setting fire to the cotton would be obviated or lessened, and notwithstanding said knowledge he continued to operate the engine in the same dangerous manner, and that as a proximate consequence thereof the cotton was destroyed by fire from the engine, the Railway Company would be liable, notwithstanding appellants' contributory negligence. A discovery of the peril by the Railway Company's servants would impose upon the Railway Company the new duty of using every means then practicable to prevent communicating fire to the cotton, but this new duty did not arise until the peril was actually discovered. "The same principle of law which, on grounds of public policy, will not permit a person to recover when his own negligence has proximately contributed to the injury, will not permit the party who has inflicted the injury in violation of such new duty to defend upon the ground of such negligence." Texas & Pac. Ry. Co. v. Breadow, 90 Texas, 31; Texas & Pac. Ry. Co. v. Staggs, 90 Texas, 461; Martin v. Texas & Pac. Ry. Co., 87 Texas, 117; Edwards v. Campbell, 12 Texas Civ. App., 236.

By their twenty-third assignment appellants complain of the refusal of the court to give in charge to the jury their eleventh special charge, which is as follows: "If the jury believe from the evidence that sparks of fire escaped from the engine of defendant Railway Com-

pany and set on fire the cotton of W. A. Morgan & Bros., causing its destruction, then such facts constitute a prima facie case of negligence on the part of the defendant Railway Company; and in the absence of rebutting evidence that defendant Railway Company had used ordinary care to provide its engines with the best and most approved spark arresters in general use, and that it exercised the care an ordinarily prudent person would in handling its engine, sufficient to overcome such prima facie case of negligence, and in the absence of negligence on the part of W. A. Morgan & Bros., proximately contributing to such loss, will render the defendant Railway Company liable for the injury occasioned thereby, and your verdict will be for the plaintiffs."

The charge is correct as a legal proposition (Gulf, C. & S. F. Ry. Co. v. Johnson, 92 Texas, 591), but there was no error in refusing to give it for the reason that its substance is contained in paragraph 8 of the general charge, which is as follows: "The burden rests upon the plaintiffs to show that the fire which burned the cotton of plaintiffs, W. A. Morgan & Bros., was set out by the escape of sparks of fire from defendant's engine; and if said fact is shown, then to defeat plaintiffs' recovery the burden rests on the defendant to show that it used ordinary care to equip its said engine with the most approved spark arrester in general use, and that in operating its engine at said time and place its employes used ordinary care, and did not cause the setting out of such fire by reason of running over the streets of La Grange at a greater rate of speed than six miles per hour; or that the plaintiffs, Morgan & Bros., or their agent, were guilty of such contributory negligence as will preclude their recovery." The assignment is overruled.

The appellants offered to prove by J. M. Byrnes that he was familiar with the method of construction of the various compresses in Texas, and their platforms, and familiar with the location of the same with reference to railway tracks, and with the method of their operation and of handling and storing cotton on their platforms, and that the construction and location of the compress at La Grange was practically identical with that of said other compresses in Texas, and that the method in use by the La Grange & Lockhart Compress Company in the storage of cotton in its compress and on its platforms, and in the handling of cotton in its compress at the time of the fire, was the same as in use at all other compresses. The court sustained an objection to the testimony and appellants reserved a bill of exception, and this action of the court is made the basis of their twenty-eighth assignment of error. Appellants contend that as the compress in question was constructed just as every other compress was in Texas, and its cotton handled just as every other compress in Texas handled cotton, the La Grange & Lockhart Compress Company could not have been guilty of negligence, because if it did as every other compress company did, its action would constitute ordinary prudence. The assignment is without merit. The habitual practice of any number of compresses, for any period of time, can not make a negligent act an act of due care and diligence. The test is, did the Compress Company exercise ordinary care, that is, such care and caution in the storing or hand-

ling of cotton as a person of ordinary prudence would have exercised under the same circumstances. Kirby Lumber Co. v. Dickerson, 42 Texas Civ. App., 504; International & G. N. Ry. Co. v. Hawes, 54 S. W. Rep., 326; Weatherford, M. W. & N. Ry. Co. v. Duncan, 88 Texas, 614; Gulf, C. & S. F. Ry. Co. v. Evansich, 61 Texas, 6; Gulf, C. & S. F. Ry. Co. v. Smith, 87 Texas, 358.

What we have here said disposes also adversely to appellants' contention of their thirty-fourth assignment, which complains of the refusal of the court to permit them to prove by the witness Letzerich what other persons had cotton on the platform at the time of the fire, and that during the year many persons, including merchants, cotton buyers and sellers, placed their cotton on the platform; and of their thirty-fifth assignment complaining of the refusal of the court to permit them to prove by the witness, Schumacher, that it was the general habit of the people who dealt in cotton and had handled cotton in the community, to place the same upon the compress platform just like Morgan & Brothers did.

Appellants sought to prove by the witness Psencik that he had on the 19th of November, 1905, seen an engine of the appellee Railway Company set out a fire near Plum. An objection to the testimony was sustained and on this action of the court appellants base their thirty-seventh assignment of error. The testimony shows that the engine that was being operated at the time of the destruction of the cotton was No. 419. It was not attempted to be shown by Psencik that the engine which set out the fire near Plum was engine 419. The rule seems to be that when the particular engine which caused the fire complained of can not be identified, evidence that sparks and burning coals were frequently dropped or fires set out by engines passing upon the same road on other occasions, at about the time of the fire, is admissible to show habitual negligence and to make it probable that appellants' injury proceeded from the same cause. In the present case it is evident that the only engine which would have set out the fire that destroyed the compress and appellants' cotton was engine 419, and the inquiry was properly limited to the construction, condition and operation of that particular engine. San Antonio & A. P. Ry. Co. v. Home Ins. Co., 70 S. W. Rep., 1000; Galveston, H. & S. A. Ry. Co. v. Chittim, 31 Texas Civ. App., 40.

Appellants by their thirty-eighth assignment complain of the action of the court in excluding, over their objection, the testimony of the witness, Solomon, as to which would best prevent the escape of sparks, the netting in use as spark arresters on the Southern Pacific and other roads he knew of, or the appliances used by the appellee Railway Company. This witness had been a locomotive engineer since 1863, and it was proposed to prove by him that he had run an engine on the Southern Pacific railroad two trips a day for twenty-two years and that the spark arresters in use on other railroads than the appellee's were better for the prevention of escape of sparks than that in use on appellee's railway. The witness was shown a sample of two kinds of arresters, and these samples have been sent up with the record in this case. The kind used by the Southern Pacific is made of steel wire and is known as "four mesh netting," that is, four meshes to

the inch, while that used by appellee Railway Company has one-and-quarter by one-fourth of an inch mesh. This witness testified that he had worked on seven different railroads, but that he had not worked on any railroad where the kind of spark arrester was used as that in use on appellee's railway. We are of the opinion that the evidence was admissible. It seems to us that the wide experience of the witness as an engineer and in handling of engines equipped with spark arresters, qualified him to speak as to the relative merit of the two kinds of arresters although he had never used or seen the kind employed by the appellee. The assignment is sustained.

F. T. Chase, a witness for appellee, testified that the character of arrester used by appellee was in general use throughout the United States and in considerable use by first class railroads. This testimony was based upon what the witness had read in railway journals. Objection to the evidence was made on the ground that it was hearsay and not admissible, and the admission of the testimony is made the basis of appellants' forty-first assignment of error. We think the objection was well taken and should have been sustained.

By their forty-sixth, forty-seventh and forty-eighth assignments, appellants complain of certain language of the attorneys for appellees in their argument before the jury. In view of the disposition we make of this appeal we do not think it necessary to pass upon the points raised, as the argument complained of will probably not be urged on another trial.

Appellee Railway Company makes the independent proposition that the judgment of the court below should be affirmed notwithstanding errors may have been committed on the trial, because the jury could not have found any other verdict than they did for the reason that the undisputed testimony shows that appellants were guilty of such contributory negligence as contributed to their own damage or loss. In the view we take, it would not be proper for us to set out the evidence bearing on the question of the contributory negligence of appellants, or to discuss it further than to say that the evidence bearing on that question was not so conclusive as to appellants' negligence that reasonable minds could not differ as to the conclusion to be drawn from it.

Appellants in their brief have presented ninety-five assignments of error. Each assignment is followed from one to nine distinct propositions. Many point out matters entirely immaterial in reaching an accurate conclusion and some of them are trivial. The record and this court should not have been so burdened. However, we have examined all the assignments and those not herein specifically passed upon are deemed to present no reversible errors and are overruled.

Because the contract therein discussed did not indemnify the Railway Company against loss of property other than that of the Compress Company, as before shown, no judgment other than one in favor of the La Grange & Lockhart Compress Company could have been rendered, hence the judgment of the court below is as to it affirmed; and for the errors indicated the judgment as to the appellee, The Missouri, Kansas & Texas Railway Company of Texas, is reversed and

the cause remanded for a new trial in accordance with the views
herein announced.                                                .
                    *Affirmed in part.    Reversed and remanded in part.*
    Writ of error refused.