## THE G., C. & SANTA FE R'Y CO. v. FRANK G. EVANSICH.

(Case No. 1632.)

1. RAILWAY COMPANY — DAMAGES — CHARGE OF COURT.— In a suit against a railway company for damages alleged to have resulted from the negligence of its servants, whereby plaintiff's child was injured while playing on a turntable of the road, the following charge was given to the jury, it having been urged on the trial that the custom of other railroads not to lock or fasten their turn-tables was a sufficient reason for appellant's neglect in this respect: "The fact that it was not a custom upon other roads in Texas or in other states, and upon defendant's road, to fasten, lock, guard or watch turn-tables will not affect plaintiff's right to recover in this suit, if it is shown by the evidence that he has received damage as alleged. It is the legal duty of defendant to keep its turn-table locked, fastened, or guarded, to keep children without discretion from being injured thereon, without regard to the custom of railroads as to the fastening or guarding turn-tables." *Held,*

(1) The charge did not inform the jury that a failure to perform a given act was negligence, but only that the custom of other roads would not defeat plaintiff's right to recover "if it was shown by the evidence that he had received damage as alleged."

(2) The second sentence of the charge announced a legal duty incumbent on defendant, and was not objectionable.

(3) The charge was proper to meet a defense erroneously based on the custom of other railroads as to fastening their turn-tables.

2. NEGLIGENCE — CUSTOM.— It is doubtful whether in any case, in which, in the absence of a contract, express or implied, negligence as an element, is the foundation of a right, custom may be set up for the purpose of showing that negligence does or does not exist. It would seem that whether negligence did or did not exist must be determined in the very case in which its existence is charged. Following Crocker *v.* Schureman, 7 Mo. App., 359, and other cases cited.

3. CHARGE OF COURT.— See opinion for the second instruction asked by appellant and properly refused because tending to confuse the minds of the jury by directing their attention to a false issue.

4. NEGLIGENCE.— The duty rests upon a railroad company to protect a child from being injured by it, when the child is wanting in discretion to protect itself.

5. CHARGE OF COURT.— A charge of the court, in an action for damages against a railway company for injury done a child on its turn-table, that the law does not impose any duty on the company to lock or fasten its turn-table, was properly refused, because . tending to mislead the jury to the belief that no duty rested on the company to keep its turn-table securely.
6. COSTS.— If it is shown that the purpose of a party in resorting to taking the deposition of a witness, and also examining him on the witness stand, was to oppress the adverse party by increasing costs, the court might impose the costs of the deposition on the party in fault; but such purpose would have to be shown to the satisfaction of the court.
7. COSTS.— When no purpose to oppress by increasing needlessly the costs in a case is shown, he who forces another to law cannot complain if the entire costs of perpetuating and bringing before the court in the most enduring, effective and favorable manner all the evidence there is against him, are imposed upon him if judgment shall be rendered for his adversary.

Appeal from Washington.   Tried  below  before the Hon. I. B. McFarland.

Suit by appellee to recover damages of the railway company for injuries to his son, seven years old, received while he was engaged in play, with other boys, upon a turn-table of defendants, at Brenham, Texas.

At the September term, 1881, a demurrer to the petition was sustained and the cause dismissed; but, on appeal, this judgment was reversed.   See 57 Tex., 123.

The case was again tried at the March term, 1883, and resulted in a judgment for the plaintiff for the sum of $225.

The opinion states the case as to the points decided.

*Hume & Shepherd*, for appellant, cited:   Evansich *v.* G., C. & S. F. R'y Co., 57 Tex., 126;  T. & P. R'y Co. *v.* Murphy, 46 Tex., 357; H. & G. N. R. R. Co. *v.* Parker, 50 Tex., 345–46;  R. R. Co. *v.* Stout, 17 Wall., 664.

*T. D. Jodon* and *Breedlove & Ewing*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— There are many assignments of error in this cause, but only such as have been presented in the brief of counsel for appellant will be considered.

The court in its charge to the jury clearly instructed them that the appellee was not entitled to recover unless the injury of which he complained resulted from the negligence of the appellant, and that the negligence of the appellee or his son contributing to the injury would defeat a recovery.

Whether there was negligence by either party was fairly submitted in parts of the charge not complained of, but it is claimed

that the following instruction took the question of negligence from the jury.

The instruction objected to is as follows:   " The fact that it was not the custom upon other roads in Texas, and in other states, and upon defendant's road, to fasten, lock, guard or watch turn-tables, will not affect plaintiff's right to recover in this suit if it is shown by the evidence that he has received damages as alleged.   It is the legal duty of defendant to keep its turn-table locked, fastened or guarded, to keep children without discretion from being injured thereon, without regard to the custom of railroads as to not fastening or guarding turn-tables."

It is certainly true that the habitual practice of negligent acts by any number of railways, for any period of time, cannot make a negligent act, an act of due care and diligence.   The charge in question does not inform the jury that a failure to perform a given act is negligence, but it does inform the jury, in effect, that the habitual practice of the appellant, and of other railways, not to lock, fasten, guard or watch turn-tables would not affect the right of the appellee to recover, "if it is shown by the evidence that he has received damages as alleged."

The petition alleged that the injury was received through the negligent act of the appellant, and whether this was true or not was left to the jury to be determined by the evidence.

The last part of the charge, though it refers to given methods of securing the turn-table, could not have been understood by the jury otherwise than as instructing them that it was the duty of the railway company so to keep its turn-table that children not having sufficient discretion to know and avoid danger attending the use of it could not use it.

This is certainly the duty of a railway company, and it was not improper for the court so to inform the jury, the other conditions upon which the liability of the appellant depended having been given in the charge.

The record makes it reasonably manifest that the custom of other railways not to secure their turn-tables was urged as a sufficient reason for a neglect in this respect by the appellant, and as a measure of the care and diligence required of it; and the charge in question was evidently given to correct any erroneous impression in this respect which may have been made upon the mind of the jury during the trial.

· The second instruction asked by the appellant was: "If you believe, from the evidence, that the turn-table of defendant was

built in a proper manner, upon its own property, and that it is and has been customary upon railways generally to leave turn-tables unlocked and unguarded, and that such custom and practice is reasonable, and such as an ordinarily prudent person might be expected to exercise, then you will find for the defendant."

This instruction was misleading and otherwise objectionable. The question was: Did the injury result from the negligence of the appellant? This was the inquiry to be made by the jury, under the evidence before them bearing upon that fact.

The charge asked was calculated to induce the jury to believe that the proper construction of the turn-table, upon the land of the appellant, was a distinct and important inquiry in the case. This was not true; for however well the turn-table may have been constructed upon the land of the appellant, yet it was liable if it kept the turn-table negligently and injury resulted therefrom without neglect by appellee or his son.

It was also calculated to induce the jury to believe, if other railways usually kept their turn tables *unlocked* and *unguarded*, and that with such railways such was a reasonable and prudent manner of keeping them, that it followed, as a matter of course, that the failure of the appellant to secure its turn-table would not be negligence.

There are two vices in the charge in this respect. Negligence is a fact to be determined in a case by the evidence, and that other railways may not usually have kept locked or guarded their turn-tables, and that such habitual practice may have been, as to them, reasonable, and the exercise of due care, would not tend to prove that such failure on the part of appellant was the exercise of due care.

The facts under which a turn-table was so left unsecured would have to be looked to in each case to determine whether due care was used or not. In one case due care may not require that a turn-table, from its situation, or other reason, be fastened at all, while in another the failure to fasten it would be negligence.

While it is true that an established custom may be looked to, in many cases, for the purpose of determining what parties really intended by a given contract, and what acts in the performance of it will satisfy it, it may well be questioned whether in any case in which, in the absence of contract express or implied, negligence as an element, is the foundation of a right, custom may be set up for the purpose of showing that negligence does or does not exist.

In such cases it would seem that the question whether negligence

exists must be determined by the facts in the very case in which the question arises.   Crocker *v.* Schureman, 7 Mo. App:, 359; Hill *v.* Portland & R. R. R. Co., 55 Me., 444; Hibler *v.* McCartney, 31 Ala., 508; City of Champaign *v.* Patterson, 50 Ill., 65; Bacon *v.* City of Boston, 3 Cush., 180; Hinckly *v.* Barnstable, 109 Mass., 127; Gahagan *v.* B. & L. R. R. Co., 1 Allen, 189; Bailey *v.* N. H. & N. Co., 107 Mass., 496.

No such question was attempted thus to be submitted to the jury by the charge refused, but the charge sought to permit the jury to find that the acts of the appellant were not negligence, from the fact that other railways, without reference to situation or surroundings of their turn-tables, were accustomed to leave them unfastened.

The first part of the fifth instruction asked by the appellant was incorrect, and should not have been given; for it is not true that a duty does not rest on a railway company to protect a child not having discretion sufficient to protect itself from injury resulting from the negligent act of such company.

The charge refused was: "Defendant owed no duty to the plaintiff's son to watch over and protect him from injury.   All that the law required of the defendant was that the turn-table should be properly constructed, and that the same should be kept in such manner as might reasonably be expected, under all the circumstances, of any person of ordinary and average prudence and care."

The residue of the charge, so far as proper, was sufficiently contained in the charges given.

The seventh instruction refused was: "The law does not impose any duty upon the defendant, or any other railroad company, to lock or fasten or inclose its turn-table."

Under the case made by the pleadings and evidence, this instruction was correctly refused, because misleading, in that it was calculated to induce the jury to believe that no duty rested on the railway company securely to keep its turn-table.

It appears that the depositions of three witnesses were taken by the appellee, neither of which were used on the trial, and that two of the persons whose depositions were taken were summoned and testified on the trial.

It further appears that other witnesses were summoned who were not used as witnesses.

A motion was made to tax the costs of depositions not used, and of summoning and attendance of such witnesses as were not examined, against the appellee, and this motion was overruled.   This is assigned as error.

There is nothing in the record showing what the testimony of the witnesses, as contained in the depositions, was, nor what the witnesses summoned, but not used, were summoned to testify to. In the absence of such showing we might presume that the court below heard evidence upon those matters and found the facts to be such as properly sustained the ruling made. Ponton *v.* Bellows, 13 Tex., 254.

If, however, the ruling of the court was made upon the motion and facts appearing of record in that court, we are of the opinion that the court did not err. The statute gives a party to a suit the right to take the deposition of a witness, although he may reside in the county in which the suit is pending, and it also gives the right to have the witness in court.

Cases may arise in which it may be apparently necessary for a party to a suit to take the deposition of a witness in order to preserve his testimony, as in case of a very aged or feeble person, and, considering the uncertainty of life, it would be a wise precaution in any case.

The deposition of a witness, when taken, from want of skill or care in the officer taking it, or from failure of the witness fully to comprehend interrogatories, may be defective in its statements, or the statements made in it may show that the witness is in possession of material facts which he was not known to possess at the time interrogatories were propounded to him. In such case it would certainly be the right of a party to perpetuate the evidence which he has taken by deposition, and this at the expense of the adverse party, if judgment is ultimately rendered against him, and also to bring the witness before the court and there examine him upon the whole case. In such case the fact that a deposition had been taken ought not to prevent the recovery of the entire cost of deposition and witness.

He that forces another to law cannot complain if the entire costs of perpetuating and bringing before the court, in the most enduring, effective and favorable manner all the evidence there is against him is imposed upon him if judgment shall go against him.

The advantage of having a witness on the stand, where full and complete examination can be made by counsel accustomed thereto, cannot be too highly appreciated. It is the most effective method of eliciting all the facts to the witness known, and we are of the opinion, when it is done in good faith, although a deposition has been taken to perpetuate the evidence, that it is the right of a party to call the same witness to testify upon the stand, if in his judgment

this will more fully develop the facts than is done by the deposition; and that, in such case, it is just that the losing party should pay the costs of the deposition and witness.  If the purpose of resorting to both methods of taking evidence is shown to be to increase the costs and thus to oppress the adverse party, the court would have the power to impose the costs of the deposition or of the witness on the party in fault in thus incurring unnecessary expense.  Such purpose would have to be shown to the court in some legitimate way, however, before it could act on such a question.

In reference to the cost of the deposition not read, and of witnesses summoned, but not examined, we are of the opinion, in the absence of facts showing that they were not summoned in good faith for the purpose of establishing some issue in the case, or that more than two were summoned only to prove the same fact, that the ruling of the court below was correct.  The simple fact that their evidence was not used is not enough to justify the taxing of their cost against the party who summoned them.  A party must prepare evidence for every phase of his case; and it is no infrequent occurrence for a witness who can and would testify to some material fact, not to be called, because some witness for the adverse party establishes the same fact, or because the fact which he could establish is admitted, or in the direction which the case takes becomes unimportant, though before the trial commenced it appeared to be important.

This question was considered by the court of appeals in the case of Perry v. Harris, Condensed Reports, 478, with the same result which we reach in this case.

There being no error, the judgment is affirmed.

AFFIRMED.

[Opinion delivered January 29, 1884.]