ALASKA S. S. CO. v. GILBERT.

(Circuit Court of Appeals, Ninth Circuit.   October 23, 1916.)

No. 2829.

1. SEAMEN ⬦➡12, 13—DISCHARGE—WRONGFUL DISCHARGE.

A seaman employed as a watchman on a vessel had been employed on a previous voyage, when his hours were from 6 p. m. to 6 a. m.  The shipping articles did not specify the hours, nor did the rules of the sailors' union of which he was a member.  The mate of the vessel demanded that the seaman begin his watch at 5 p. m., and the seaman refused unless given overtime, but proceeded to enter upon the discharge of his duties.  He was discharged when the vessel reached a port of call, being paid the amount of wages earned up to that time.  *Held,* that the discharge was improper under the circumstances, and the seaman was entitled to recover the cost of his passage to the home port, and of maintenance awaiting passage.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 45–51, 30;  Dec. Dig. ⬦➡12, 13.]

2. ADMIRALTY ⬦➡124—PROCEEDINGS—COSTS.

While Rev. St. § 824 (Comp. St. 1913, § 1378), allowing proctor's fees for depositions taken, limits the fee to cases where the deposition is admitted in evidence, costs for transcribing depositions of witnesses, one of whom was the libelant, taken in good faith, but which were not used, because of the personal presence of witnesses, may be allowed.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 836–857;  Dec. Dig. ⬦➡124.]

Appeal from District Court of the United States for the Northern Division of the Western District of Washington;  Jeremiah Neterer, Judge.

Libel by Arthur J. Gilbert against the steamship Seward, which was claimed by the Alaska Steamship Company as owner.  From a decree for libelant, the owner and claimant appeals.  Affirmed.

W. H. Bogle, Carroll B. Graves, F. T. Merritt, Lawrence Bogle, and Eugene C. Luccock, all of Seattle, Wash., for appellant.

Eimon L. Wienir, of Seattle, Wash., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge.  [1] As the opinion of the District Court clearly states the facts of this case, we affirm the decision of Judge Neterer on the merits, and append his opinion.

[2] The appellant has also presented a question of costs.  It appears that the testimony of the libelant, Gilbert, and of one Bering, a witness on his behalf, was taken by deposition before trial by stipulation of proctors.  When the trial came on, the deposition of the libelant was not used, as he was produced and examined in open court.  In making up the costs bill, a proctor's fee for taking the

deposition of the witness Bering and the cost of the transcript of all the depositions, including the deposition of libelant, was included. The claimant excepted to these items, and the exception was allowed as to the item for the transcript, but the clerk disallowed cost of the transcript of depositions of Gilbert and Bering. The District Court allowed costs for transcript of all the depositions on the ground that they were taken in good faith, even if the necessity for their use had disappeared. The claimant objects to the allowance of costs for the transcript of libelant's own deposition, upon the ground that libelant was produced in open court and his deposition was not used.

There is a distinction between costs allowed as fees of proctors and those allowed for transcribing evidence. In respect to depositions in the admiralty court, no proctor's fee is recoverable in a cause unless the deposition taken is admitted in evidence. Section 824 of the Revised Statutes (Comp. St. 1913, § 1378) allows proctors' fees on depositions only when the deposition has been admitted in evidence. Barnardin v. Northall et al. (C. C.) 83 Fed. 241; The Persiana (D. C.) 158 Fed. 912; United States v. Venable Construction Co. (C. C.) 158 Fed. 833. But the allowance of disbursements for transcribing a deposition pertains directly to testimony intended to be used in the case, and when the deposition has been taken in good faith and under apparent necessity therefor, the fee for transcribing it so that it can be used may be allowed in the discretion of the court, even though the witness himself is produced and for this reason the deposition is not used. Nead v. Millersburg Home Water Co. (C. C.) 79 Fed. 129; G., C. & S. F. R. Co. v. Evansich, 61 Tex. 3; The Oregon, 133 Fed. 609, 68 C. C. A. 603.

Finding no substantial reason for disaffirmance of the discretion exercised by the District Court, the order taxing costs is sustained.

Affirmed.

### Opinion of Neterer, District Judge.

"Libelant was employed as night watchman on board the steamship Seward, September 25, 1915. No hours of employment were specified in the shipping articles. On a previous trip on the same vessel his hours were from 6 p. m. to 6 a. m. He understood the same hours applied upon the trip in issue, and he was on duty from 6 p. m. to 6 a. m., from the time the vessel left the port of Seattle until the controversy arose some days later. On October 3d, while preparing to 'turn to' his watch at 5:45 p. m., the first mate asked him, 'Why aren't you on watch?' Libelant replied, 'It isn't 6 o'clock yet;' to which the mate replied that it didn't make any difference, he was supposed to be on watch at 5 o'clock, to which libelant replied, in substance, that it would mean an hour overtime for him. There was some further conversation between libelant and the mate, in which the mate asked libelant whether he would not work unless given overtime, and libelant said he would not, or words to that effect, but proceeded to enter upon the discharge of his duties. He was discharged and taken from the vessel on its arrival at Juneau, Alaska, the following day. The mate tendered to libelant the amount of wages earned to the time of discharge, which the libelant refused. Libelant remained at Juneau, Alaska, for the period of 10 days before securing return passage to Seattle. His fare from Juneau to Seattle was

$16. He has brought this action to recover the wages for the trip, expenses necessarily incurred to return to Seattle, and $500 damages.

"No hours of employment were mentioned in the shipping articles. The agreement between the Puget Sound Shipping Association, of which claimant is a member, and the Sailors' Union of the Pacific, of which libelant is a member, provides that the hours of regular seamen shall be from 7 o'clock a. m. to 5 o'clock p. m., with one hour off for lunch, and further provides that the work outside of these hours, 'except such work as is necessary for the immediate safety of the vessel or passengers, cargo and crew,' shall be paid for as overtime. The agreement further provides that quartermasters, stationmen, and watchmen, when working, shall perform their regular dutres without charge for overtime, and provides the hours of such employment to be from 7 a. m. to 5 p. m. These hours manifestly do not apply to night watchmen. Section 13 of this agreement provides: 'Members of the sailors' union shall use their best judgment at all times, and if in doubt as to what shall be charged as overtime, shall do the work required of them, and then refer the case to the union for adjustment.' The conduct of the libelant in this case does not indicate that the language employed expressed his real intention, except as a claim under section 13, supra, as he immediately 'turned to' his work and remained aboard the ship until his discharge, at all times manifesting his willingness to do his duty. The fact that no definite hours were prescribed for him by the shipping articles, or by the agreement between the Puget Sound Shipping Association and the Sailors' Union of the Pacific, and the hours of 6 to 6 having been given him on a prior voyage, and he having continued under the same hours upon this voyage, and the first intimation he had that the hours should be changed was at the time of this conversation, would indicate suggestion for extra time, as it would add an hour to the time previously required of him. There is no showing of disqualification or unfitness for service, nor mutinous or rebellious or contumacious conduct. Under the circumstances, the mate should have dealt with the libelant in a more indulgent spirit. Libelant should not have used the expression to his superior officer which he did, and yet there was nothing disrespectful in the words used, or any suggestion of disrespect or insubordination, even though there was a suggestion of liability for overtime, and the mate would not, under the circumstances, have the right to discharge him. I think the libelant should recover his wages for the trip, the $16 fare expended, and $35 to reimburse him for the outlay which was occasioned at Juneau, Alaska.

"A decree may be prepared."