TEXAS & P. RY. CO. v. HUGHES et al. (No. 1708.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 25, 1917. Rehearing Denied Feb. 1, 1917.)

1. REMOVAL OF CAUSES ☞27—RIGHT OF REMOVAL.

The fact that a railroad company is incorporated by congressional act does not entitle it to remove an action from a state to a federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 64–68.]

2. APPEAL AND ERROR ☞1043(7)—DENIAL OF CONTINUANCE—HARMLESS ERROR.

Failure to grant defendant a continuance where amendment at trial raises a new issue is without prejudice where court's charge does not authorize a finding on such issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4121.]

3. PLEADING ☞248(11)—AMENDMENT—NEW CAUSE OF ACTION.

In an action for wrongful death, amendment of allegation that blow caused death by reciting that deceased suffered a shock to his back, etc., is a mere amplification, and does not raise a new issue.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 693–695.]

4. TRIAL ☞256(8) — INSTRUCTIONS — SUFFICIENCY.

Where a court correctly states the law under Vernon's Sayles' Ann. Civ. St. 1914, art. 6484, on authority of a railroad company to cut down trees on land of another, defendant, in the absence of a request, cannot complain that such instruction does not also embody law of articles 6505, 6530, requiring consent of owner.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 636.]

5. CARRIERS ☞291—DUTY TO PASSENGERS—DEGREE OF CARE.

A carrier of passengers must use a high degree of care to discover and remove dangerous obstructions on its track.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1170–1176.]

6. APPEAL AND ERROR ☞1062(1)—HARMLESS ERROR—SUBMISSION OF UNCONTROVERTED ISSUES.

The submission of uncontroverted issues, where not confusing or misleading, is harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212.]

7. TRIAL ☞194(16)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

An instruction that unless you believe from the evidence by a preponderance thereof that the said injuries, if any, received by said H. were direct and proximate cause of death, you cannot find for plaintiff, is not on weight of evidence in assuming that defendant is responsible for injuries.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 466.]

8. CARRIERS ☞317(6) — INJURIES TO PASSENGER—EVIDENCE.

On issue whether a railway company was negligent in not discovering position and condition of a tree before it fell onto its track, evidence that track was straight for a distance of 200 yards north of where tree stood is admissible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1301.]

9. EVIDENCE ☞474(3)—OPINION EVIDENCE—APPEARANCE OF DECEASED.

One who had known deceased for 15 years was competent to testify that after injury he "did not appear natural."

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2197.]

10. NEGLIGENCE ☞30—EVIDENCE—CUSTOM—ADMISSIBILITY.

In the absence of contract, where negligence is the foundation of a right, custom cannot be set up to show that negligence does or does not exist.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 49.]

11. TRIAL ☞82—OBJECTIONS—SCOPE.

In action for wrongful death, evidence that railway company did not produce conductor and brakeman who were present at accident is not subject to objection that it is immaterial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 194–210.]

Appeal from District Court, Cass County; H. F. O'Neal, Judge.

Action by Beulah Hughes and others against the Texas & Pacific Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This appeal is from a judgment against appellant and in favor of appellees, to wit, Mrs. Beulah Hughes, the widow, Mrs. Virginia Hughes, the mother, and Mabel, Hazel, Marshall G., George T., Jessie L., and Beulah Ruth Hughes, the children of George E. Hughes, for $15,000 as damages they were entitled to because of the death of said George E. Hughes, which they alleged was caused by an injury sustained by him as a result of negligence of appellant while he was a passenger on one of its trains. In their original petition appellees, after alleging that appellant, on December 3, 1914, negligently permitted

"a large pine tree to stand within about 65 feet of its line of railway and within reach of said railway should the same fall, which was at all times a menace and imminent danger to passenger traffic over said railway. That said tree was liable at any time to fall across the said track of said railway. That for a long period prior to the above date defendant had notice of the dangerous condition of said pine tree, or by the exercise of ordinary care could have learned of its dangerous condition, and it was the duty of defendant to have removed said tree long prior to said date,"

further alleged that on said December 3, 1914,

"said tree, just prior to the time the passenger coach on which said George E. Hughes was riding had reached the point opposite same, had fallen toward and on said railway track, extending the limbs and branches of the same across said railway track and on and against said railway train, so that the limbs of said tree, which were large and dangerous, and without any fault on the part of said George E. Hughes, and while said train was being rapidly propelled by the agents and employés of defendant, struck said George E. Hughes on the back of the head, and just in the rear of his left ear, a severe blow, thereby * * * badly lacerating and bruising his head and causing a severe shock, and * * * did fracture his skull and inflict upon him a painful and fatal injury, from which said wounds and injuries aforesaid he languished until on or about the 14th day of October, 1915, when he died."

In the amended petition, on which the trial was had, the allegations in regard to the position of the tree, the danger therefrom to trains, and appellant's knowledge thereof were repeated and followed by allegations that when the train reached a point on appellant's track opposite point where the tree had been standing it

"collided with said tree, and the limbs and branches thereof which obstructed the track of defendant and the safe passage of said train, which was occasioned by said tree falling on or across the track or on the train of defendant, collided with said train, on which the said George E. Hughes was being conveyed; and plaintiffs allege that as the result of said collision with said tree, which had fallen on the track, or on the train, of the defendant as aforesaid, and by reason thereof a limb of said tree, or some part of said tree, struck the said George E. Hughes on the back of his head a severe blow, thereby seriously and fatally wounding the said George E. Hughes, and said wound inflicted as aforesaid did then and there bruise and wound him on his head, causing a severe shock to his head, back, spine and nervous sys-

tem, and by the means aforesaid and in the manner aforesaid * * * injured his brain and the blood vessels leading thereto, and from which wound and injuries he, the said George E. Hughes, languished until about the 14th day of October, 1915, when he died."

It sufficiently appeared from the testimony that on the morning of December 3, 1914, deceased and his brother, John Hughes, were passengers on one of appellant's trains from Atlanta to Texarkana; that they sat together on a seat in the car, deceased being next to a window thereof; that when the train reached a point between Alamo Station and Sulphur river, and while it was moving rapidly, it collided with the limbs of a tree which had fallen toward appellant's track; that one of the limbs, after breaking the glass of the window by which deceased was sitting, struck him back of his ear on the left side of his head; that as a result of injury inflicted by the blow he died in October, 1915; and that by his death appellees were damaged in the sum found by the jury. John Hughes' account of the accident, testifying as a witness, was as follows:

"At the time he [deceased] was injured he was sitting by the window, and he was on my left, and we were going along there talking. His face was turned toward me when he was talking, and his head towards the back of the window that he was sitting by; and all at once something hit him, or he hallooed, and he fell over on me and said, 'I am hurt.' He was rubbing his head and said, 'I am hurt.' It was on the back of the head, just back of his left ear, along about the base of his skull. We didn't know what had happened to the train. We noticed some of the lights of the windows were broken out, and especially the one we were sitting by. When the crash came he fell on me and threw his hand up to his head and said he was hurt, and he hallooed. At the time that he was knocked over on me I heard something like a crash, like something had struck the train. It made a quick racket, more like lightning had struck it than anything else."

Appellant's track ran about north and south at the point where the accident occurred. The tree (a pine) before it fell stood 61 feet from the track on land west of and adjacent to appellant's right of way. Extending from the ground about 4 feet up and along its north side, and visible from appellant's track, was what witnesses designated as a "cat-face," which, they explained, indicated decay, caused by a burn or something else. The cat-face was about 12 inches wide. There was no evidence that a wind was blowing at the time the tree fell, or that it fell because of any unusual condition then prevailing.

The charge to the jury required the jury to find for appellant unless they believed it was guilty of negligence in failing to discover the dangerous situation and condition of the tree and remove it prior to the time it fell. The jury found, on evidence which, we think, authorized them to do so, that appellant was guilty of negligence in the particulars stated.

Glass, Estes, King & Burford, of Texarkana, and Figures & Stewart, of Atlanta, for appellant. O'Neal & Allday and Hugh Carney, all of Atlanta, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] The court did not err in overruling appellant's petition to remove the cause from the state to a federal court on the ground that it was incorporated under an act of Congress. T. & P. Ry. Co. v. Hanson, 189 S. W. 289.

[2] In their original petition appellees alleged, as is shown in the statement above, that the tree fell "just prior to the time the passenger coach on which said George E. Hughes was riding had reached the point opposite same," and that deceased was struck by limbs of the tree on the back of his head, "causing a severe shock" and fracturing his skull, from the effects of which he died. The allegation as to the time when the tree fell was not carried into the amended petition, on which the trial was had filed on the day before the trial commenced, but it was alleged therein that the collision, "was occasioned by said tree falling on or across the track or on the train"; and, as a further consequence to the deceased of the injury caused by his being struck on the head by limbs of the tree, it was alleged that he suffered a severe shock to his back, spine, and nervous system. On the ground that it was surprised by allegations made for the first time in the amended petition, as indicated, appellant moved the court for a continuance of the cause when it was called for trial, and in several assignments complains of the action of the court in overruling its motion.

The contention, with reference to the change in the allegations as to the falling of the tree, is, that negligence on the part of appellant in failing to discover the tree on the track after it fell, and remove it, or so operate the train as to avoid injury to passengers, could not be predicated on the allegations in the original, but could be predicated on those in the amended petition. If it should be conceded that this was true, and that appellant was entitled to time to prepare to defend against negligence in those respects, the error of the court in overruling the motion would appear to be harmless, because the court in his charge did not authorize the jury to find appellant to have been guilty in the particulars stated. The jury were authorized by the charge to find in appellees' favor only in the event they believed appellant was negligent in failing before the time when the tree fell to cut down and remove it. Franks v. Williams, 37 Tex. 24; Turner v. Faubion, 36 Tex. Civ. App. 314, 81 S. W. 810; Ry. Co. v. Shieder, 26 S. W. 509.

[3] The allegation in the amended petition that the deceased suffered a shock to "his back, spine, and nervous system" did not entitle appellant to a continuance. Had the suit been for damages for personal injuries not resulting in death, and had the trial been on the original petition, testimony that the blow on the head resulted in shock to deceased's back, spine, and nervous system would have been admissible in support of the allegation in said original petition that the blow on his head "caused a severe shock." Railway Co. v. Trout, 152 S. W. 1137. But the suit was for damages for the death of Hughes caused by limbs on the tree striking him on the head. Doubtless a blow on the head sufficient to cause his death necessarily would have caused shock to his back, spine, and nervous system, and the allegation in the amended petition that the blow caused such shock should be treated as a mere amplification of the allegation in each of the petitions that the blow caused his death. The ultimate fact to be established to entitle appellees to recover as they sought to was that the blow on the head killed Hughes. Other consequences to him of the blow were merely evidence tending to establish such ultimate fact, and need not have been alleged as a basis for proof thereof. Telegraph Co. v. Hirsch, 84 S. W. 394.

It appeared from the testimony that appellant's track was in the center of its right of way, which was 100 feet wide at the point where the accident occurred. It further appeared that the tree was not on the right of way, but was 11 or 12 feet from the west line thereof and on land which appellant did not own. The second paragraph of the court's charge to the jury, which is attacked as erroneous, on various grounds, was as follows:

"Under the laws of this state railway companies are authorized to enter on the land of any person and cut down standing trees that may be in danger of falling on or obstructing the track of such railway, making compensation therefor."

[4] The instruction was in the language, substantially, of the statute (article 6484, Vernon's Statutes), and was not an erroneous statement of the law. It is true that the right of a railway company to go upon another's land and cut down and remove such a tree is conditioned on its first obtaining the consent of the owner to do so, or compensating him therefor as provided by the statute. Article 6505, 6530, Vernon's Statutes. If appellant thought it important that the jury should be informed as to the conditions on which it possessed the right, it should have prepared and presented to the court, with a request to give it, a charge embodying same.

[5] In his charge the court told the jury it was appellant's duty

"to exercise a high degree of care to remove all large, dangerous trees, if there were any dangerous trees adjacent to its track and near enough to fall on or across its track and thereby endanger the lives of its passengers."

It is insisted that appellant owed to the deceased only the duty to use ordinary care to discover and remove trees standing near enough to its track to endanger, if they should fall toward the track, passengers on its trains. We do not think the rule which charges a carrier of passengers with a duty to use a high degree of care for their safety while the relationship exists should be so limited. Railway Co. v. Halloren, 53 Tex. 46, 37 Am. Rep. 744; Railway Co. v. Gresham, 106 Tex. 452, 167 S. W. 724; Rice v. Railway Co., 153 Mo. App. 35, 131 S. W. 376; O'Conner v. Railway Co., 163 Wis. 653, 158 N. W. 343. No reason why it should be is stated in the briefs, and none has occurred to us. Unquestionably, appellant owed to the deceased the duty to use a high degree of care to have its track clear of obstructions which might, by colliding with its trains, injure passengers thereon. If, to accomplish that, it was necessary to exercise a high degree of care to discover and remove nearby trees which might, as the one in this instance did, fall on and obstruct the track, we think it was appellant's duty to have exercised it, and that appellant would be liable for the result to a passenger of its failure to do so.

[6] That the tree fell on appellant's track as charged by appellees, and that deceased was a passenger on the train that collided with it, were not controverted facts. The court in his charge should have assumed they existed, but instead he required the jury to find they existed before returning a verdict in appellees' favor. This was not error entitling appellant to a reversal of the judgment. The contention made, that the instruction, because it required the jury to find undisputed as well as disputed facts in appellees' favor, was "confusing and misleading, and calculated to lead the jury to believe that the disputed issues in the case were established as favorably to the plaintiffs as the undisputed issues," is without merit, unless it should be assumed that the jurymen were incapable of determining from the evidence before them what facts were and what were not disputed. We do not think such an assumption should be indulged.

[7] The seventh paragraph of the charge to the jury was as follows:

"I further instruct you that unless you believe from the evidence by a preponderance thereof that the said injuries, if any, received by the said George E. Hughes, were the direct and proximate cause of his death, you cannot find for the plaintiffs."

It is objected that the instruction was "on the weight of the evidence, in assuming that the defendant is responsible for the injuries, if any, received by the said George E. Hughes." If it is not plain enough—and we think it is—that the instruction is not subject to such criticism, even when considered without reference to other portions of the charge, it is when the charge as a whole is looked to.

[8-10] The court did not err when, over appellant's objection, he permitted appellees to prove by the witnesses Cameron, Allen, and McConnell that its track for a distance of 200 yards or more north of the point thereon opposite the place where the tree stood before it fell was straight. Clearly the testimony was admissible for what it was worth on the issue as to whether appellant was guilty of negligence in failing, if it did, to discover the position and condition of the tree before the time when it fell. Nor did the court err when he permitted appellees to prove by the witness Price, over appellant's objection, that he had not qualified as an expert, that the deceased, during his lifetime after he suffered the injury, "did not appear natural." The witness had known deceased 10 or 15 years. And we think the court did not err when he refused to permit appellant to prove by Merriweather and others, roadmasters on railroads in timbered parts of Texas, Arkansas, and Louisiana,

"that they had observed the conditions and character of the right of ways of railroads in the sections mentioned, and that, as a general rule, the right of way of railroads is only 100 feet wide in said sections of the country; that from past experience and observation said railroads had adopted said widths as being safe, and had cleared the timber only to the outer edges of the right of way on each side of the railroad track; that this rule and condition existed on all the railroads in the timbered country in the states mentioned on which they had worked or had made any observation, and that this practice and system as to the width of the right of way and clearing of the same had proven safe for travel on trains, as far as their observation went."

Railway Co. v. Evansich, 61 Tex. 3, where Judge Stayton said:

"It may well be questioned whether in any case in which, in the absence of contract, express or implied, negligence as an element, is the foundation of a right, custom may be set up for the purpose of showing that negligence does or does not exist."

See Railway Co. v. Rowland, 82 Tex. 166, 18 S. W. 96; O'Conner v. Andrews, 81 Tex. 28, 16 S. W. 628.

[11] The assignment in which complaint is made of the action of the court in permitting appellees to prove, over its objection, that same was immaterial to any issue in the case, that the conductor and brakeman on the train in question, who were at the trial as witnesses for appellant, did not testify, but before the conclusion of the trial were by appellant, with appellees' consent, excused from further attendance on the court as witnesses, is overruled. The testimony was not subject to the objection urged to it. Railway Co. v. Blair, 184 S. W. 566; Landon v. Halcomb, 184 S. W. 1098.

There is no error in the judgment, and it is affirmed.