### WHITTINGTON v. CAMERON COMPRESS CO. (No. 6660.)*

(Court of Civil Appeals of Texas. Nov. 21, 1923. On Rehearing Jan. 21, 1925.)

**1. Contracts ⬯155—Construed strictly against party preparing them.**

Where contracts are prepared by one of parties who chooses his own language and provides exemptions from liability, they should be construed strictly against him, and in case of ambiguity party against whom exemption is claimed should have benefit of favorable construction.

**2. Contracts ⬯147(1)—Intention effectuated if it can be reasonably ascertained.**

Intention of parties to contracts will be effectuated if it can be reasonably ascertained. .

**3. Contracts ⬯147(3)—Instrument construed as whole.**

In ascertaining intention of parties to a contract, instrument as whole must be considered.

**4. Contracts ⬯147(2)—General intent to be effectuated, though certain words or clauses would defeat.**

Where a contract as a whole discloses intention of parties, and certain words or clauses, if taken literally, would defeat such intention, it is duty of courts to construe them, if possible, in such manner as to be consistent with and to effectuate general intent.

**5. Warehousemen ⬯24(7)—Compress company's receipt held to exempt it from liability for loss by fire.**

Compress company's receipt for cotton *held* intended to exempt it from liability for total loss of cotton by fire, though receipt used words "fire damage."

**6. Warehousemen ⬯22—Insurance not required.**

Cotton compress company was not required to insure cotton left with it, in view of acts 36th Leg. (1919) c. 126 (Vernon's Ann. Civ. St. Supp. 1922, art. 7827½ et seq.).

**7. Warehousemen ⬯22—Receipt held not to require insurance.**

Receipt for cotton given by compress company *held* not to require it to insure cotton or to notify owner of its intention not to do so.

**8. Warehousemen ⬯24(7)—Exemption from liability for loss by fire not contrary to public policy.**

Exemption from liability for cotton loss by fire in receipt for cotton given by compress company was not contrary to public policy as relieving compress company from results of negligence, in view of Acts 36th Leg. (1919) c. 126, §§ 3, 21 (Vernon's Ann. Civ. St. Supp. 1922, arts. 7827½aa, 7827½jj).

**9. Warehousemen ⬯3—Compress company held "warehouseman."**

A cotton compress company, giving receipts for cotton stored awaiting instructions from owner to compress it, *held* a public "warehouseman," as defined by Rev. St. art. 7819, as amended by Acts 36th Leg. (1919) 2d Called Sess. c. 54, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 7819).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Warehouseman.]

**10. Warehousemen ⬯24(3)—Compress company held not entitled to peremptory instruction in action for value of cotton destroyed by fire.**

In action against compress company to recover value of cotton destroyed by fire, defendant *held* not entitled to peremptory instruction on showing that it complied with requirements

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted March 24, 1925.

of state markets and warehouse department and of insurance company as to water supply, policing grounds, inflammables, and night watchman, and complied with customs and usages of business, in view of Acts 36th Leg. (1919) c. 126, § 8 (Vernon's Ann. Civ. St. Supp. 1922, art. 7827½d).

**11. Evidence ⬤⇒555—Expert testimony as to extinguishment of fires held improperly excluded.**

Expert testimony concerning extinguishment of fires by automatic sprinkler *held* improperly excluded on ground that fires testified about were not shown to be "of kind and character in this kind of plant."

*On Motion for Rehearing.*

**12. Warehousemen ⬤⇒34(5)—Plaintiffs have burden of proving fire result of compress company's negligence.**

In action against compress company for loss of cotton destroyed by fire, plaintiff had burden of showing that fire was result of company's negligence, notwithstanding Acts 36th Leg. (1919) c. 126, § 8 (Vernon's Ann. Civ. St. Supp. 1922, art. 7827½d).

**13. Warehousemen ⬤⇒34(9)—Whether compress company's failure to protect cotton from fire was negligence held for jury.**

In action against compress company for cotton destroyed by fire, whether company was negligent in failing to cover exposed cotton on or about its premises with material that would protect it from fire *held* for jury.

**14. Warehousemen ⬤⇒24(3)—Care required of compress company to protect cotton from fire not measured by custom and usage.**

Whether compress company was negligent, so as to be liable for loss of plaintiff's cotton destroyed by fire, must be determined from manner in which plaintiff's cotton was taken, stored, and protected in the light of location, arrangement, and surroundings of particular compress, and company cannot rely on its compliance with custom and usage of compresses generally.

Appeal from District Court, Milam County; John Watson, Judge.

Action by T. P. Whittington against the Cameron Compress Company. Judgment for defendant, and plàintiff appeals. Reversed and remanded.

J. W. Thomas, of Belton, and R. B. Pool and W. A. Morrison, both of Cameron, for appellant.

Chambers, Wallace & Gillis and Henderson, Kidd & Henderson, all of Cameron, for appellee.

BAUGH, J. On May 29, 1920, the appellant delivered to appellee 98 bales of cotton at Cameron, in Milam county, Tex. Appellee placed same on its platforms under its sheds, which were covered with corrugated iron roofs, and held them in storage, awaiting instructions from the owner of the

cotton to compress it. For each of said bales of cotton the appellee issued a receipt of which the following, except as to the marginal notations showing the number, mark, weight, and gin number of the individual bale, is an exact copy:

| | |
|---|---|
| "Cameron Compress Company. | No. |
| "(Not a Public Warehouse—Not a Public Weigher.) | 43535 |
| | Mark |
| "Cameron, Texas, May 29, 1920. | TPW |
| "Received of ——— one bale of cotton, described as shown on margin, for account of ——— for storage and compression. | This Company's Weight |
| | 531 |
| "This company binds itself to rede-liver said cotton to the legal holder | Gin No. |
| hereof or pay the market value thereof, based upon weight of this company | 2599 |

as shown on margin, loss by act of Providence or fire damage excepted (unless insured by this company), and subject to compression and storage charges thereon.

"This company is not a public weigher or warehouse, and the weight made by it is to limit its liability as holder of cotton for compression, and this receipt is not issued for the purpose of establishing as accurate weight upon which the purchase or sale of this bale of cotton is to be based, and any other weight shown on the margin shall not bind this company.

    "Cameron Compress Company,
       "By ———."

Appellee charged appellant storage on said cotton at the rate of 50 cents per bale for the first 15 days, and 2 cents per day per bale for each day thereafter. On October 10, 1920, all of said cotton was destroyed by a fire which partially destroyed said compress.

Appellant sued appellee for the value of said cotton, alleging liability under the terms of its warehouse receipts. Appellee denied that it was a public warehouse within the meaning of the statute, pleaded the character of its business as a compressor, its authority to limit its liability in its receipts, that it had done so in the receipt above set out, the destruction of said cotton by fire, that same was not insured, and that it was therefore not liable. Appellant then by supplemental petition pleaded negligence of the appellee: First, in the manner in which it stored said cotton; second, in its failure to have more than one watchman on the night of the fire; third, in its failure to have overhead automatic fire extinguishers; and, fourth, in its failure to have the cotton covered by tarpaulin. These allegations of negligence were specifically denied by appellee, and by proper pleadings it set out in detail its methods of storing cotton, methods of fire protection, extent of watchman service, etc., alleging that same conformed to the custom and usage of similar businesses in Texas, and that it had complied with the requirements of fire insurance companies. The appellee assumed the burden of proof on the charge of negligence. After hearing the ev-

---

idence, the court overruled all requests of the appellant to submit to the jury the issues of negligence raised by him, and gave the jury peremptory instructions to find for the defendant. From such action the plaintiff below brings this appeal.

#### Opinion.

The appellant predicates error on 15 propositions of law. The first 5 propositions relate to the receipt issued by appellee, which appellant contends is a contract and by its terms renders appellee absolutely liable to appellant for the value of the cotton. These propositions depend upon the construction of the receipt itself. Appellant contends and argues at length: First, that the exempting clause in the receipt did not provide for exemption in case the cotton was wholly destroyed by fire, but only in case it was damaged or partially destroyed by fire; second, that the language of the parenthetical clause whereby it sought to relieve itself of liability for loss by fire, "unless insured by this company," raised by implication an obligation on the part of appellee either to insure the cotton or notify appellant of its intention not to do so; third, that such exemption was an attempt on the part of the appellee to relieve itself from liability which might arise from its own negligence, and that same was contrary to public policy and void. It was undisputed that the cotton was totally destroyed, was not insured, and that appellee gave appellant no notice that it had not insured it. If, therefore, any of appellant's contentions are correct, it remained only for the jury to find the value of the cotton destroyed.

[1-4] The rule seems well settled that, where contracts are prepared by one of the parties who chooses his own language and provides exemptions under which such party may seek to escape liability, such contracts should be construed strictly against the party who prepared them. And in case there is ambiguity in the exemption provision the party against whom the exemption is claimed should have the benefit of a favorable construction. Insurance Co. v. Johnson (Tex. Civ. App.) 235 S. W. 652; Compress & Warehouse Co. v. Wills et al. (Tex. Civ. App.) 204 S. W. 1056; Brown v. Insurance Co., 89 Tex. 594, 35 S. W. 1060; Morgan v. Ry. Co., 50 Tex. Civ. App. 420, 110 S. W. 983. It is equally well settled that in the construction or interpretation of any contract the intention of the parties thereto will be effectuated if same can be reasonably ascertained. In ascertaining such intention it is a cardinal rule of construction that the instrument as a whole must be considered. And where a contract as a whole discloses the intention of the parties, and certain words or clauses, if taken literally, would defeat such intention, it is the duty of the courts to construe

them, if possible, in such manner as to be consistent with and to effectuate the general intent. Gibbs v. Barkley et al. (Tex. Com. App.) 242 S. W. 464; Meeks v. Robarbs, 157 Ky. 199, 162 S. W. 819; Sims v. Brown, 252 Mo. 58, 158 S. W. 627; 6 R. C. L. §§ 225 and 227; 13 C. J. p. 525.

[5] We think the receipt in question could without difficulty have been more clearly drawn. We are of the opinion, however, that taken as a whole there is not such ambiguity or uncertainty in the clumsily drawn exemption clause as to reasonably becloud the meaning of the receipt or render uncertain the intent of the compress company. We think that it reasonably and fairly appears from the receipt that the appellee intended to bind itself to redeliver the cotton to the owner or to pay for it, unless a loss occurred through either one of two agencies; that is, either through act of Providence or by fire. We think a reasonable and fair interpretation of the language used discloses that the phrase, "by act of Providence or fire damage," relates to and qualifies the word "loss," and that such phrase was meant to and does limit the kinds of loss from which appellee relieved itself of liability, and not the extent of such loss. To hold otherwise would, we think, defeat the reasonably clear intent shown by the instrument. Appellant earnestly insists that, having used the words "fire damage," the exemption must be limited to a strict interpretation of that term, and that only "damage" by fire was exempted, and not "destruction" by fire. Inasmuch as we think it fairly appears that it was from loss by fire as well as loss by act of Providence that the appellee intended to relieve itself, we confess that we see no good reason why the word damage was added in the receipt at all. We think, however, that it would be a strained construction to say that appellee intended to exempt itself from liability for all damage by fire to this cotton, even though such damage be 99 per cent. of its value, or up to the point of total destruction, but that in the event of total destruction it would then claim no such exemption. Such an interpretation would, we think, do violence to the language used, and be contrary to the well-established rules of construction.

[6, 7] The next proposition asserted by appellant is that the insertion of the words in parenthesis, "unless insured by this company," made it incumbent upon appellee either to insure the cotton or to notify appellant of its intention not to do so. We do not agree with this contention. The liability of warehousemen in this state has been extensively covered by statute. The Uniform Warehouse Receipts Act, passed by the Thirty-Sixth Legislature (General Laws 36th Leg. c. 126, pp. 215 to 227 [Vernon's Ann. Civ. St. Supp. 1919, art. 7827½ et seq.]), prescribes what such warehouse receipt shall

(268 S.W.)

contain. We think the receipt in question substantially complies with that act. Nowhere does the law require the warehouseman to insure the goods stored. In the absence of an established custom to insure, or an express agreement to do so, a warehouseman is under no duty to keep stored goods insured. 40 Cyc. 432; 27 R. C. L. § 11, p. 956. There being no obligation on the appellee to insure the cotton, we think none existed to notify appellant of its intention not to do so, and that the clause complained of could not be construed to imply one.

[8] Nor do we think there is any merit in appellant's proposition that such exemption is contrary to public policy and void. As stated above, the receipt was in substantial compliance with the Uniform Warehouse Receipts Act. Under section 21 of that act the liability of the warehouseman is prescribed as follows:

"Sec. 21: A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

The receipt does not seek to exempt appellee from any act of negligence on its part, and, had it contained any such provision, same would have been in direct violation of section 3 of the act above mentioned, which provides that no warehouseman's receipt shall "in any wise impair his obligation to exercise that degree of care in the safekeeping of the goods intrusted to him, which a reasonably careful man would exercise in regard to similar goods of his own." Appellee could not relieve itself from liability for its own negligence, nor do we think the receipt in question undertakes to do so. Exporters' & Traders' Compress & Warehouse Co. v. Wills et al. (Tex. Civ. App.) 204 S. W. 1056. Also Exporters' & Traders' Compress & Warehouse Co. v. Schulze (Tex. Civ. App.) 253 S. W. 702.

In his sixth, seventh, eighth, ninth, and tenth propositions of law, based upon proper assignments of error, appellant complains of the court's action in refusing to submit as special issues to the jury the questions of negligence alleged in appellant's supplemental petition. In that petition appellant alleged the four grounds of negligence hereinabove set out. Appellee pleaded that it had complied with the requirements of the markets and warehouse department, with the requirements of insurance companies, and with the usage and custom of others engaged in storing and compressing cotton; that such custom and usage was reasonable; and that such compliances constituted a complete defense to the charges of negligence.

[9] In the case of the compress company against Schulze, above cited, in an opinion by our late lamented Chief Justice Key, this court held that, where the compress company totally failed to redeliver the cotton stored with it, or to account for its nondelivery, a prima facie case of liability is made out, and that the burden of proof that the loss did not happen as the result of its negligence is then shifted to the defendant. Under the undisputed evidence we think appellee at the time of the fire was a public warehouseman as defined by article 7819, R. S. (amended by Acts 1919, 36th Leg. 2d Called Sess. ch. 54, § 1 [Vernon's Ann. Civ. St. Supp. 1922, art. 7819]). Section 8 of the Uniform Warehouse Receipts Act, above cited, after providing the conditions under which stored goods shall be delivered, reads as follows:

"In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

It seems clear then that it was the duty of the defendant in this case to show absence of negligence on its part.

[10] Appellee showed that it had complied with the requirements of the state markets and warehouse department and of the insurance companies as to water supply, barrels, pipes, buckets, hose, etc., throughout the plant, and in properly policing the grounds as to loose lint cotton and other inflammables, and that it had a night watchman who covered the entire plant in his rounds every 30 minutes. Most of the floor space of the compress was covered with cotton, and there were several hundred bales on the ground adjacent to the platform, and about 1,200 bales in cars on the tracks adjacent to the compress. The manager of appellee company testified as follows:

"I have been in several compresses, and have informed myself, and am fairly familiar with the construction of compresses of this kind. Our compress was built in accordance with general usages of the plants of this character."

On the question of proper fire protection he also testified, after giving in detail the precautions taken, as follows:

"This fire protection system and extinguishment system maintained by us was in compliance with the usages and customs of compresses generally."

On the question of keeping adequate watchmen on duty the witness Brown, who was the manager of appellee company, after detailing at length the services of its watchman, testified as follows:

"It was the custom and usage of compresses and also the requirements of the insurance companies to have one watchman who could patrol the entire plant once each 30 minutes

at all times at night, and to patrol the plant each hour on holidays and Sundays."

It is not controverted that there were approximately 7,700 bales of cotton on the premises and the tracks alongside same at the time of the fire, and that the watchman did patrol the plant every 30 minutes that night. On this point P. T. Calloway, another witness for appellee, testified as follows:

"The average plant requires one watchman. The average plant has an area of from 75,000 to 85,000 square feet, and one man can make that round and look after this area in usually from 10 to 15 minutes."

In this case it is admitted that the compress building covered approximately 117,000 square feet, and that their properties covered 4 acres of ground.

Appellee insists that, having shown compliance with custom and usages of its kind of business on all matters in which appellant charged it with negligence, and in the absence of a showing by appellant that such custom and usages are unreasonable, it has brought itself clearly within the rule laid down in the cases of Railway Co. v. Alexander, 103 Tex. 594, 132 S. W. 119, and Taylor v. White (Tex. Com. App.) 212 S. W. 656, and was entitled to an instructed verdict. The rule as stated by Justice Strong, in the case of Taylor v. White, is as follows:

"The measure of care required of the master is that degree of care which an ordinarily prudent person engaged in the same kind of business would have exercised under like or similar circumstances. The best evidence of the degree of care which an ordinarily prudent person would have exercised under given circumstances is the degree of care which ordinarily prudent persons engaged in the same kind of business customarily have exercised and commonly do exercise under like circumstances."

Does the case at bar come within the rule thus stated? We think not. The language of Justice, Strong is very general, but his opinion states the law of master and servant in a case of personal injury caused by alleged defective machinery. In such cases it will be readily seen that the same dangers to the servant in operating a machine, or in performing some duty in connection with its operation, exist irrespective of where such machine is operated. The risk of injury to a servant from an exposed roller, an improperly incased cogwheel, an open revolving shaft, an unprotected fly wheel or set of saws, or an electric current, would obtain whether such machinery be operated in city or rural community, in high altitude or low, in a fireproof building or wooden shack. The danger, if there be danger, is inherent in the machine itself, and it is as likely to inflict the same injury to an employé in one place as in another. Thus the precautions or protection as to any particular machine should be uniform and apply to all men operating the same kind of machinery anywhere. What is prudence for one then becomes prudence for another, and what is ordinary care for one would almost universally be ordinary care for another. It was in this character of cases that the rule above quoted was laid in the case of Taylor v. White.

The case before us clearly differs both in principle and in facts from the line of master and servant cases urged by appellee as governing in this case. In the case of Taylor v. White, above cited, it is stated that "the custom of others engaged in like business is not the absolute test of negligence," nor do we dissent from the rule there laid down in distinguishing this case from that line of cases. There are two elements on which the rule is based. One is that the parties are engaged in the same kind of business. The other is that they must be so engaged under the same or similar circumstances. Both are essential to sustain the rule. The nature of the cotton compressing and warehousing business is such that almost every plant necessarily has exposures to, and dangers from, fire peculiar to that particular plant and differing from all others. What an ordinarily prudent man would do—and that is the test of negligence—to protect a compress from fire would manifestly be determined by the fire hazards of that particular plant. Certainly it cannot be said that what is a customary precaution against fire in a fireproof shed on the coast of Texas, where there is abundant rainfall and little or no winds, and where the atmosphere is moisture laden constantly, would also be equally prudent or precautious in an open inflammable shed in the semiarid sections of west Texas where rainfall is light and high dry winds frequent. Nor could the same precautions against fire be said to be equally prudent in plants of similar construction in different altitudes and under different climatic conditions, where one might be located in a city or a densely populated community, or near to other industries which increased the fire risk, while the other might be located in a village or small town where no such risks obtain. Dangers from fire cannot be confined to the compress property alone, but may depend upon its location, the surrounding hazards, railway operations, arrangement of sheds, high winds, or numerous other circumstances peculiar to each particular plant. Of course, the same degree of care to prevent fire applies to all compresses alike, but the character and extent of precautions against fires must be reasonably commensurate with the risks, dangers, and hazards to which the property is exposed. And, since the surrounding circumstances of different compresses in different places are necessarily dissimilar, it follows that no uni-

form custom or usage in precautions against fire, even if such should obtain, should conclusively determine the question of negligence in a particular case. We think, therefore, that the trial court erred in giving a peremptory instruction on this theory of the case.

On the question of negligence in not maintaining an automatic sprinkling device throughout appellee's plant, the appellant's witness, J. W. Smith, testified as follows:

"I know about the existence of the system and the principle upon which it works. I have been working with them since 1912. I have installed three different systems, and I am thoroughly familiar with the working principle of the system. This automatic sprinkler system is in general use in Texas in industrial plants for the extinguishment of fire. I have had personal knowledge of the system and its operation, and have seen the system operated in case of fire on several occasions. In the first place, the water is fed from an overhead tank. Our tanks happen to be 75 feet high. That is the regulation size, and it holds 20,000 gallons of water. We have a 6-inch line that comes off that into the mill and from there the pipes are distributed throughout the mills, graduated down to a half inch, which is the smallest pipe. We have one of these faucets or sprinklers every 10 feet, and that will melt out at 155 degrees Fahrenheit. The fire itself, without the presence of any person, turns on the water, and it will turn in the alarm. That is done through this fuse in the head here (indicating). The fuse in here melts at 155 degrees Fahrenheit and when this head is melted this spring here throws the cap off and this little bulb on top here throws a spray around for 12 feet, which more than takes care of every 10 feet, which laps from one to the other of these jets; and when the water comes through it has a tendency to put out the fire, because it puts it immediately where the fire is, and when the water starts running through the pipes it rings an alarm to let you know there is a fire somewhere in the plant. If there is a fire there, it will operate itself to extinguish the fire whether there is anybody there or not."

Appellant's witness Chandler also testified with reference to the automatic sprinkler as follows:

"It sprays the water, and is bound to throw it on the fire that is under it. The plugs stay closed until it gets hot enough to melt the wax in them and they open up, and as each one is opened it turns the water on. It sprays the water in a circle. The automatic sprinkler system is not a very complicated system, and is not very expensive to install in an ordinary business."

The appellee's manager also testified on this point as follows:

"The automatic sprinkler system in Cameron, Tex., would give us 33⅓ per cent. off on the insurance rate, whatever the rate was."

We think this testimony raised questions of negligence that should have been submitted to the jury.

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury." Cartwright v. Canode, 106 Tex. 507, 171 S. W. 697; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139.

In addition to the evidence as to the general use of the overhead automatic sprinkling system, it appears from the testimony of the witness Calloway that this compress was larger than the usual compress at which it was customary to keep one watchman, and that at the time of the fire there was on the property of appellee, and the adjacent railway tracks some 7,700 bales of cotton. We are not prepared to say that with this vast amount of inflammable and valuable property belonging to others either on or contiguous to its plant the appellee should not have maintained a stricter and more frequent watch against fire than it customarily did or would have done had the quantity of cotton on hand been negligible. In any event, it was peculiarly the province of the jury to say, in the light of all this evidence, whether or not the appellee had, in these respects, exercised the degree of care imposed upon it by law, and the trial court erred in not submitting these matters to the jury.

[11] We are also of the opinion that the court erred in excluding the testimony of the witness Smith offered by appellant, as set out in his fifteenth proposition. This proffered testimony was as follows:

"Well, it would be impossible for me to tell how many fires I have seen, because sometimes we have four or five in one day, from nails and metals or rocks getting in the saws, and we have these heads scattered throughout the lint room, and the fire cannot get 10 feet without burning out one of these heads and turning on the water; and it puts out the fire. I have had it put out fires where I did not throw a drop of water with anything else on it. My own personal experience with it, I know it will put out the fire, and I know the water will come out wherever there is a little fire around it. You can burn this one [faucet or head] out with a match—here it is marked on it 155 degrees."

This testimony was excluded upon objection of appellee's counsel that it was not shown that such fires were "of kind and character in this kind of plant." The proposition that fire will consume anything combustible unless extinguished and that throwing water on it is the natural and universal method to extinguish it is too elementary for discussion. And any device which operates to throw water on fire will extinguish it or tend to do so regardless of the kind or character of plant in which it may be used. This testimony should have gone to the jury to assist them in determining the value of the overhead automatic sprinkler as a fire ex-

tinguisher, and, in the event they found that it was effective as such, then in determining whether or not the appellee was negligent in not having such a system on its property.

We have not discussed in detail all of the questions raised by appellant, but we have disposed of the substantial issues involved. For the errors pointed out, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.

## On Motion for Rehearing.

Both parties filed motions for rehearing on our original opinion herein. We wrote briefly on those motions on January 23, 1924. Thereupon appellant filed a second motion for rehearing, and appellee filed a motion to certify two of the issues involved in the case to the Supreme Court. Since we had followed the former opinion of this court in Exporters' & Traders' Compress & Warehouse Co. v. Schulze, 253 S. W. 702, in holding that, where the compress company failed to redeliver the cotton upon demand, the burden of proof was upon it to show that it was not negligent, and the Supreme Court had granted a writ of error because of conflict between the holding in the Schulze Case and the holdings of other courts of Civil Appeals, we concluded to await the action of the Supreme Court in said case before taking further action herein. The Supreme Court has recently disposed of the Schulze Case, 265 S. W. 133 (opinion not yet [officially] published), the holding in that case on the burden of proof was reversed, and the rule laid down that, where a compress company shows loss of cotton by fire, the burden then shifts to the plaintiff to show that such fire was due to the negligence of the company. We have concluded, therefore, to withdraw our former opinion on said motions, both for purposes of correcting same, and to discuss more fully the questions raised, and to substitute therefor this opinion.

[12] In accordance with the rule laid down in said case of Exporters' & Traders' Compress & Warehouse Co. v. Schulze in an opinion by Judge Chapmen of the Commission of Appeals, our holding in the main opinion herein is corrected, and we now hold that it was incumbent upon appellant to show that the fire which destroyed his cotton was the result of the negligence of appellee.

[13] Upon further consideration of the question, and examination of the photographs accompanying the record, and the testimony regarding conditions prevailing about the compress at the time, we have concluded that the question of whether or not appellee was negligent in failing to cover the exposed cotton on and about its premises with some material that would protect it from fire was also a matter that should have been submitted to the jury. Though the evidence is somewhat meager on the issue as to whether or not appellee used ordinary care in placing and storing appellant's cotton on and about its premises, we think it was sufficient to carry that issue to the jury, and therefore sustain appellant's third assignment of error on this point.

[14] Upon further consideration of the questions raised, and in accordance with the conclusions reached and reasons given therefor in our main opinion herein, we sustain appellant's assignments 10 to 14, relating to proof by appellee that it had complied with custom and usage of compresses generally with reference to construction of plant, firefighting equipment, covering of cotton, and watchman service, and also with the regulations and requirements of insurance companies in such respects. Whether or not appellee was negligent in the respect charged by appellant was a question of fact, to be determined by the evidence in this particular case—that is, the manner in which appellant's cotton was taken, stored, and protected, in the light of location, arrangement, and surroundings of this particular compress. G., C. & S. F. Ry. Co. v. Evansich, 61 Tex. 3; Morgan v. Ry. Co., 50 Tex. Civ. App. 420, 110 S. W. 978; St. Louis & S. W. Ry. Co. v. Neef (Tex. Civ. App.) 138 S. W. 1168; T. & P. Ry. Co. v. Hughes (Tex. Civ. App.) 192 S. W. 1091; Texas Power & Light Co. v. Bird (Tex. Civ. App.) 165 S. W. 8. It was not sufficient to rely on its compliance with custom and usage of compresses generally in this respect.

To avoid doubt about the matter upon another trial of this case, we may also add in this discussion that the action of the trial court in sustaining appellee's special exception to paragraph 4 of the appellant's amended first supplemental petition was error. This paragraph charged appellee with negligence in the manner in which it had stored appellant's cotton. What we have already said obviates the necessity of setting out said pleading, or further discussion of this question. Suffice it to say that the pleadings were sufficient to raise the issue and should not have been stricken out.

Though not referred to specifically in our original opinion, nor in this discussion, what we have said disposes of the issues raised by the assignments. To the extent above indicated the motion is granted. In other respects it is overruled.

Granted in part, and in part overruled.